709 So.2d 283 (1998)
Paula B. ANDERSON, et vir., PlaintiffsAppellants,
v.
BEAUREGARD MEMORIAL HOSPITAL, Defendant-Appellee,
Blood Systems, Inc., Third-Party DefendantAppellee.
No. 97-1222.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1998.
*284 John Layne Hammons, Shreveport, for Paula B. Anderson, et vir.
Eve Barrie Masinter, New Orleans, Monica A. Fois, for Beauregard Memorial Hospital.
Peter Elliot Sperling, Stephanie A. May, New Orleans, for Blood Systems, Inc.
Before YELVERTON, THIBODEAUX and PETERS, JJ.
YELVERTON, Judge.
Paula Anderson and her husband appeal a judgment which sustained an exception of prescription. The Andersons sued Beauregard Memorial Hospital alleging that Paula contracted hepatitis C from a blood transfusion she received while in the hospital in 1974. Beauregard Memorial filed a third-party claim against Blood Systems, Inc. alleging it supplied the blood. Both defendants filed exceptions of prescription which were maintained by the trial court. A judgment was signed on May 7, 1997, dismissing the Andersons' case. We affirm.

FACTS
In 1974 Paula was hospitalized in Beauregard Memorial as a result of complications with a pregnancy. She received a blood transfusion. Paula alleges that this is the only blood transfusion she has ever received. In 1993 she was diagnosed with hepatitis C. She and her husband filed suit against Beauregard Memorial. They alleged that the hospital sold and administered contaminated blood to her. Beauregard Memorial filed a third-party demand against Blood Systems as the supplier of the blood that was transfused to Paula. Both defendants filed exceptions of prescription. A hearing was held on March 25, 1997.
Applying the one-year prescriptive period found to be applicable in these strict tort product liability cases by Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94); 636 So.2d 211, rather than the special rule of prescription applicable to medical malpractice actions, the trial court found the Andersons' claims had prescribed. The suit was filed August 22, 1994. The trial court found that defendants proved by a preponderance of the evidence that Paula had actual or constructive knowledge of her condition prior to August 22, 1993.

ISSUES
The Andersons complain that the trial court misplaced the burden of proof and made manifestly erroneous findings of fact. They complain also of multiple legal issues. We will discuss these assignments in turn.

PRESCRIPTION

Burden of Proof
The Andersons claim that the trial court erred in placing the burden of proof on them. They quote from the trial court's reasons for judgment.
Having concluded that a preponderance of the evidence supports defendants' plea of prescription, the court is further bolstered in its conclusion by a finding that the burden of proof is on plaintiff under the doctrine of contra non valentem. See Gary vs. Camden Fire Insurance Company, *285 676 So.2d 553 (La.1996), and Wimberly vs. Gatch, 635 So.2d 206 (La.1994).
When a petition reveals on its face that prescription has run, the plaintiff has the burden of showing why the claim has not prescribed. Gary v. Camden Fire Ins. Co., 96-0055 (La.7/2/96); 676 So.2d 553, and Wimberly v. Gatch, 93-2361 (La.4/11/94); 635 So.2d 206. The Andersons argue that their petition is not prescribed on its face because they filed suit within one year of discovering their cause of action. However, the Andersons' argument fails to recognize that the one-year liberative prescriptive period for delictual actions begins to run from the date injury or damage is sustained. In this case, Paula was damaged when she received the transfusion in 1974, not when she discovered that she may have received blood contaminated with hepatitis C.
However, the plaintiff can show that prescription has not run based on either of three theories: (1) suspension; (2) interruption; or (3) renunciation. Gary, 676 So.2d 553; Wimberly, 635 So.2d 206. The Andersons claim that prescription did not begin to run until they discovered their cause of action. This is the suspensive theory of contra non valentem agere nulla currit praescriptio.
The Andersons cite the case of Chaney v. State Through Dept. of Health and Human Resources, 432 So.2d 256 (La.1983), for the proposition that when a plaintiff alleges a date of discovery and files suit within one year of that date, the petition is not prescribed on its face. Here the plaintiffs alleged in paragraph 7 of their petition that prescription was suspended until Paula discovered that she was infected with hepatitis C. Therefore, the petition alleged that prescription was suspended under the theory of contra non valentem.
Regardless, the trial court, in the process of reaching its decision, actually placed the initial burden of proof on the defendants. The trial court initially found that defendants proved the Andersons' claims had prescribed by a preponderance of the evidence. There is no merit to this assignment.

Knowledge
The trial court found that Paula, more than one year before filing suit, had actual or constructive knowledge that she suffered from hepatitis C which might have been caused by the 1974 blood transfusion. "An injured party need not have actual knowledge of his condition for purposes of starting the statute of limitations for delictual actions, as long as there is `constructive notice,' that is information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry." Boyd v. B.B.C. Brown Boveri, Inc., 26,889, p. 8 (La.App. 2 Cir. 5/10/95); 656 So.2d 683, 688, writ not considered, 95-2387 (La.12/8/95); 664 So.2d 417.
The second circuit pointed to two supreme court cases, Branch, 636 So.2d 211 and Cole v. Celotex Corp., 620 So.2d 1154 (La.1993), which held that in light of the plaintiffs' own information and the diagnoses they received, the plaintiffs acted reasonably in delaying the filing of suit. In both cases, the date of diagnosis was designated as the date on which the plaintiffs had information sufficient to alert them to their cause of action and commence the running of prescription. The court in Boyd also found out that the plaintiff did not have sufficient information which would require him to file suit until he was actually diagnosed with the disease which was the basis for his lawsuit. We, too, will use the date the plaintiff learned of the diagnosis to establish the commencement of the running of prescription.
The record reveals that before Paula was diagnosed with hepatitis C, she was aware that it might have been caused by the 1974 transfusion. Dr. Mahesh Pandya suspected it might be caused by the transfusion. Her sister (who also suffered from hepatitis C) contracted it from a blood transfusion. Dr. Edwin Bonilla also testified that he discussed with Paula that hepatitis C could be caused by a blood transfusion. Paula testified that Dr. Paul Nichols told her she might have possibly contracted hepatitis C from the blood transfusion in 1974. There is no doubt that Paula was aware that if she had hepatitis C, the 1974 blood transfusion could have caused it.
*286 The prescription fact boils down to one issue: When did Paula find out she was infected with hepatitis C? It was then that prescription started running.
In Branch, 636 So.2d 211, the supreme court held that prescription did not commence until the plaintiff discovered the damage, the delict, and their relationship. The facts pertinent to Paula's discovery that she had hepatitis C which may have been caused by the 1974 blood transfusion are as follows.
On May 13, 1992, Paula saw Dr. Pandya who ran a chemistry profile and discovered that Paula's liver enzymes were abnormal. Dr. Pandya re-ran the tests on May 23 and confirmed that Paula had abnormal liver enzymes. A hepatitis profile was negative for hepatitis A and B. Her liver enzymes were better in March 1993. This was the last time Dr. Pandya saw Paula. He never diagnosed her with hepatitis.
Paula went to see Dr. Bonilla in April 1993 because of her abnormal liver function test. Her liver enzymes were still elevated. Dr. Bonilla testified that he told Paula she might have hepatitis C but never diagnosed her with hepatitis C. He referred her to a gastroenterologist.
Dr. Paul Nichols, a gastroenterologist, saw Paula on May 5, 1993. At that time, he told Paula she might have hepatitis C. She had been referred by Dr. Byrd who had ordered an HCV antibody test in April 1993. Results of the test on April 27 established that Paula had hepatitis C. However, Dr. Byrd never told Paula she had hepatitis C. Dr. Nichols also did not tell Paula in May 1993 that she had hepatitis C. Instead, Dr. Nichols ordered a liver biopsy to determine the degree of inflammation that Paula had in her liver.
It is at this point that the parties dispute what happened. Dr. Nichols claims that he called Paula within two weeks of the liver biopsy to tell her she had hepatitis C. Paula claims that Dr. Nichols did not call her until the morning of September 3, 1993, which she remembered because it was the Friday before the opening day of dove season. She remembered the day because the family was preparing to go hunting. Paula's family members supported her version. There is no documentary evidence to support either of these versions.
There were several documents that cast doubt on Paula's time of notice. In her deposition Paula stated that Dr. Nichols told her he suspected she had hepatitis C from the blood work at the time of the biopsy. He gave this diagnosis in front of her sister and a friend, Joan Johnson. Paula testified that she asked Dr. Nichols at that time how she got hepatitis C, and he told her through a blood transfusion. After the biopsy, Paula called Dr. Nichols' office on July 28, 1993, complaining of heavy vaginal bleeding for 3 weeks. Paula did not inquire about the results of the liver biopsy. Dr. Bonilla's medical records indicate that on a July 29, 1993 office visit for the bleeding problem, Paula reported for the first time that she had chronic persistent hepatitis C. The medical records from the Women's Clinic of Southwest Louisiana, Inc. indicate that on an August 3, 1993 visit Paula reported she had chronic hepatitis.
Both the medical records of Dr. Bonilla and the Women's Clinic support Dr. Nichols' testimony. Dr. Nichols indicated to Paula on May 5, 1993, that she might have hepatitis C. The liver biopsy was to confirm the extent of the disease which was chronic persistent hepatitis. Dr. Nichols testified that, according to his practice, he would have continued to call Paula after the results of the liver biopsy on May 26, 1993, until he reached her. He indicated that it might be a week to 10 days before he reached the patient. If she already knew the result when she called Dr. Nichols' office on July 28, it would explain why Paula did not question the results of the liver biopsy on that date when she made the call. The trial judge commented on "plaintiff's demeanor in testifying," saying "it was not particularly helpful to her case."
There is no doubt that Paula knew before she was actually diagnosed with hepatitis C that it could have been caused by the blood transfusion. The important question then becomes when did Paula actually know that she had hepatitis C. We agree with the trial court that the defendants proved by a preponderance of the evidence that as of at least July 29, 1993, when Paula went to Dr. Bonilla's *287 office, Paula knew she had hepatitis C. Therefore, when the Andersons filed suit on August 22, 1994, their claim had already prescribed.

TESTIMONY OF DR. RICHARD KAMM
The trial court would not allow Dr. Richard Kamm, a pathologist, to testify on the issue of prescription. The Andersons claim that this was error. The Andersons wanted to introduce the testimony of Dr. Kamm to establish the type of information Paula should have been given about her hepatitis C and how that information should have been communicated to her.
La.Code Evid. art. 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The decision of whether to accept a witness as an expert in trial is one left to the much discretion of the trial court. Hattori v. Peairs, 95-0144 (La.App. 1 Cir. 10/6/95); 662 So.2d 509, writ denied, 95-2677 (La.1/12/96); 666 So.2d 322. The decision reached by the trial court will not be disturbed on appeal unless it is clearly erroneous and involves a misunderstanding of the law. Id.
We agree with the trial court that on the issue of prescription Dr. Kamm's expert testimony was not necessary. The trial court had to determine when Paula discovered that she was infected with hepatitis C which could have resulted from the 1974 blood transfusion. This was a fact question. Dr. Kamm never treated her and had no knowledge of when she learned she had hepatitis C. How Paula should have been notified has no relation to when she actually discovered she was infected and, therefore, has no bearing on whether the Andersons' claims were prescribed. Dr. Kamm's testimony might have been relevant to other aspects of the case but not to prescription.

QUESTIONS REGARDING CAUSATION
The Andersons allege the trial court erred in not allowing their attorney to ask questions regarding the causal relationship between the hepatitis C and the blood transfusion. The following remarks were made by the trial court:
I have not read all the depositions, obviously, that have been introduced today. I have read parts of them which say that hepatitis C may be caused by various things and not necessarily through blood transfusion. For that reason, I'm going to take the position that it has not yet been proven that any hepatitis C that she has was caused by this blood transfusion. So if you will ask your questions leaving out the matter of the cause, just as to whether or not when she first learned she had hepatitis C.
We agree with the trial court that it is irrelevant whether Paula was infected with hepatitis C as a result of a blood transfusion. Paula alleged that prescription did not begin to run on her claim until she discovered her cause of action. The discovery rule of contra non valentem provides that prescription commences on the date the injured party discovered or should have discovered facts upon which the cause of action is based. Wimberly, 635 So.2d 206.
In order to prove that the discovery rule of contra non valentem is applicable to Paula's case, Paula needed only to prove the facts upon which her case was based. It was not necessary for her to establish at this point that the 1974 blood transfusion was the actual cause of her contracting hepatitis C. That would go to the merits of her case against Beauregard Memorial. Actual cause-in-fact would be an issue for the trial.
The record reveals that Paula's attorney was allowed to ask pertinent questions regarding Paula's knowledge that a blood transfusion might be the cause of hepatitis C and, therefore, that she might possibly have a claim against the hospital. The trial court did not err in refusing to allow testimony regarding the actual causation of her hepatitis C.

JUDICIAL ADMISSION
The Andersons argue that defense counsel admitted in open court that Paula was never told by any physician that her *288 hepatitis C was caused by the 1974 blood transfusion. They argue that this should be a binding judicial admission. From that point they claim that the diagnosis alone of hepatitis C was insufficient to trigger the running of prescription, because Paula remained unaware of the causal relationship between the hepatitis C and the 1974 blood transfusion.
The following is what defense counsel stated:
And the defendants will stipulate that no physician has told Ms. Anderson that her hepatitis C was caused by the January 1974 blood transfusion at Beauregard Memorial. No physician has said that, and no physician will say that.
This statement was made during a discussion concerning whether the hepatitis C was actually caused by a blood transfusion. As stated earlier, actual causation would be an issue for the trial on the merits. It is obvious that the defendants deny that Paula contracted hepatitis C from the 1974 blood transfusion. This has little to do with Paula's knowledge of whether it was possible the blood transfusion was the source of the hepatitis C. This was not a judicial admission for prescription purposes. It was simply a statement that no doctor had said that the 1974 blood transfusion was the cause of Paula's hepatitis C. See Louviere v. Huey P. Long Medical Center, 97-45 (La.App. 3 Cir. 6/11/97); 697 So.2d 1331, writ denied, 97-1859 (La.1997); 703 So.2d 1265. The record reveals many instances when Paula was made aware that the hepatitis C might have been caused by a blood transfusion, for the purpose of prescription. Whether the 1974 blood transfusion actually caused the hepatitis C would go to the merits of the case.

CONTINUING TORT DOCTRINE
The Andersons complain that the trial court did not apply the continuing tort doctrine. They claim that the hospital failed to advise Paula of the contaminated nature of the blood sold and administered, or, at the very least, the potential for such contamination. The Andersons allege that this was a breach of an ongoing duty to communicate in a timely fashion the potential risks of the transfusion. Whitnell v. Menville, 540 So.2d 304 (La.1989).
Paula was allegedly damaged when she received a blood transfusion allegedly contaminated with hepatitis C in 1974. At that time no one knew she had been contaminated with hepatitis C. Tests in 1993 revealed she was infected. The Andersons' petition alleged that they were damaged when she received this blood transfusion. The Andersons raise for the first time on appeal that the hospital had a duty to warn that the blood was contaminated. They claim Paula could have received earlier treatment had she known. This issue was never before the trial court.
However, there have been no allegations or evidence that the defendants continued to damage the Andersons. Even if the hospital had a duty to inform Paula of the possible contamination of the blood with hepatitis C (which we do not rule on today), once Paula was aware she had hepatitis C possibly contracted from a blood transfusion, it was not necessary for her to be informed. See Short v. Giffin, 96-0361 (La.App. 4 Cir. 8/21/96); 682 So.2d 249. There is no merit to this argument.
For the above reasons the judgment of the trial court dismissing the Andersons' suit is affirmed. All costs of this appeal are assessed against the Andersons.
AFFIRMED.