845 So.2d 584 (2003)
Bertha B. Bourque and Nelson J. BOURQUE
v.
LOUISIANA HEALTH SYSTEMS CORPORATION.
No. 03-56.
Court of Appeal of Louisiana, Third Circuit.
April 30, 2003.
Rehearing Denied June 4, 2003.
*585 Keith Dunn Jones, Stanley R. Aaron, Jones, Aaron & Smith, Baton Rouge, LA, for Plaintiff/Appellant, Bertha B. Bourque and Nelson J. Bourque.
Nicholas Gachassin Jr., Julie Savoy, Gachassin Law Firm, Lafayette, LA, for Defendant/Appellee, Louisiana Health Systems Corporation.
Peter Elliot Sperling, Nairda Teresa Colón, Gary L. Hanes, Kathryn Montez Caraway, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, for Defendant/Appellee, Blood Systems, Inc. d/b/a United Blood Services.
Court composed of ULYSSES GENE THIBODEAUX, OSWALD A. DECUIR, and GLENN B. GREMILLION, Judges.
THIBODEAUX, Judge.
In this strict products liability action, the plaintiffs, Bertha and Nelson Bourque, appeal the trial court's judgment granting defendants', Louisiana Health Systems Corporation d/b/a Lafayette General Hospital ("Lafayette General") and Blood Systems, Inc. d/b/a United Blood Services ("Blood Systems"), peremptory exceptions of prescription. The trial court found that Mrs. Bourque knew shortly after her motorcycle accident in 1975 that she had contracted hepatitis, and that her diagnosis was causally connected to blood transfusions she received as a result of the accident. According to the trial court, Mrs. Bourque's knowledge in or about 1975 or 1976 that she likely contracted hepatitis from the transfusion commenced the running of the one-year prescriptive period pursuant to La.Civ.Code art. 3492. Thus, plaintiffs' claim had prescribed.
We disagree and reverse. We find that Mrs. Bourque was not put on notice that she had Hepatitis C until April of 1998. She filed suit in March of 1999, less than one year after her diagnosis, which was timely. As a result, her claim has not prescribed.

I.

ISSUES
We shall consider whether prescription began to run as to Mrs. Bourque's Hepatitis C claim when she was diagnosed with Hepatitis B in 1975.

II.

FACTS
Bertha and Nelson Bourque suffered severe injuries in a motorcycle collision in August of 1975. The Bourques were treated at Lafayette General. During the *586 course of their treatments, both Mr. and Mrs. Bourque received blood transfusions; however, only Mrs. Bourque developed jaundice and extreme fatigue once she was released from the hospital. Within weeks of her release, Mrs. Bourque was diagnosed with hepatitis. She was later informed that she likely contracted serum hepatitis or Hepatitis B from the blood transfusions. From 1975 to 1977, Mrs. Bourque was bedridden as a result of her illness.
In April 1998, Mrs. Bourque was diagnosed with Hepatitis C. At that time, she was informed that she likely contracted Hepatitis C from the blood transfusions she received in 1975. Mrs. Bourque informed her doctor that she had been diagnosed with serum hepatitis or Hepatitis B[1] before, but had no knowledge that she had contracted Hepatitis C.
On March 1, 1999, the Bourques filed suit against Lafayette General. In turn, Lafayette General filed a third-party demand against Blood Systems, the entity from which Lafayette General purchased the blood. Subsequently, the Bourques amended their petition and added Blood Systems as a defendant in their suit. Both Lafayette General and Blood Systems filed exceptions of prescription, maintaining that the Bourques' cause of action had prescribed.
On July 22, 2002, the trial court heard the defendants' exceptions in open court. On July 25, 2002, the trial court provided its written reasons for judgment, granting defendants' exceptions and dismissing the Bourques' claims against Lafayette General and Blood Systems. Lafayette General's third-party demand against Blood Systems was also dismissed. On August 9, 2002, the trial court signed and entered judgment granting the exceptions. The Bourques appeal this judgment.

III.

LAW AND DISCUSSION
Plaintiffs assert that prescription did not begin to run as to Mrs. Bourque's Hepatitis C claim when she was diagnosed with Hepatitis B in 1975. We agree.
La.Civ.Code art. 3492 provides that [d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. Damage is considered to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action.
The doctrine of contra non valentem agere nulla currit praescriptio [often referred to as the discovery rule because the cause of action will not accrue until the plaintiff discovers the injury] prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff ...
(Emphasis added). (Citations omitted). Cole v. Celotex Corp., 620 So.2d 1154, 1156 (La.1993).
Plaintiffs allege that Mrs. Bourque's Hepatitis C claim did not begin to accrue until Mrs. Bourque was diagnosed with Hepatitis C in 1998. At this time, Mrs. Bourque knew or reasonably would have known about the illness and its causal connection to the blood transfusions once her doctor informed her. However, prior to her diagnosis, plaintiffs maintain that Mrs. Bourque had no knowledge that she had contracted Hepatitis C. *587 Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes [s]he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom [s]he believes may be responsible for a specific injury.
When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.
(Emphasis added). Id.
Mrs. Bourque does not deny that she was informed that she had contracted serum hepatitis or Hepatitis B in 1975. In fact, Mrs. Bourque admitted that she was bedridden for approximately eighteen months as a result of this illness. However, no one told her that she had contracted Hepatitis C nor Hepatitis non-A, non-B, as it was commonly referred to in 1975, until 1998. Hepatitis B and Hepatitis C are not the same diseases, and knowledge of one does not provide knowledge of the other. Thus, Mrs. Bourque was not put on notice of contracting Hepatitis C when she contracted Hepatitis B in 1975, and prescription did not begin to run until 1998.
Defendants support their argument by relying on two Louisiana cases: (1) Anderson v. Beauregard Memorial Hosp., 97-1222 (La.App. 3 Cir. 3/6/98); 709 So.2d 283, and (2) Turnage v. Columbia Lakeside Hosp., 98-1263 (La.App. 5 Cir. 3/30/99); 731 So.2d 919, writ denied, 745 So.2d 26 (La.1999). Lafayette General and Blood Systems maintain that these two cases are strikingly similar to the facts before us in this case. We find that the facts in the instant case are distinguishable from both Anderson and Turnage.
In Anderson, Paula Anderson was diagnosed with Hepatitis C in 1993. Previously in 1974, Anderson had received a blood transfusion during a complicated pregnancy. The plaintiff had received only one blood transfusion to her knowledge. The Andersons alleged that the blood given to Mrs. Anderson by the hospital was contaminated and filed suit thereafter. The trial court found that the Andersons' claim had prescribed, and in Anderson, we affirmed the trial court's judgment. However, this same set of circumstances is not presented in the present case.
We find that Anderson is factually similar to the present case only to the extent that the plaintiff contracted Hepatitis C from a blood transfusion. This case concerns whether a plaintiff's claim for Hepatitis C exposure prescribed when the plaintiff contracted Hepatitis B in 1975. It addresses a very specific issue, and though Anderson involves a plaintiff who contracted Hepatitis C, we find that the novelty of this issue sets it distinctly apart from Anderson.
Mrs. Anderson was never diagnosed with one disease, and later informed that she had contracted another disease, similar in name, but separate and distinct medically, whereby the knowledge of one might serve to prevent the pursuit of a legal claim on the other injury once discovered, as defendants are assert in this case. Additionally, "the record reveal[ed] that before [Mrs. Anderson] was diagnosed with hepatitis C, she was aware that it might have been caused by the 1974 transfusion." Anderson, 709 So.2d at 285. In our case, Mrs. Bourque had no knowledge prior to 1998 that she had contracted Hepatitis C; perhaps she had contracted Hepatitis B, but these are completely different diseases. Further, there was no dispute over whether Mrs. Anderson had Hepatitis C or not and that her Hepatitis C had resulted from the blood transfusions. Mrs. Bourque believed up until 1998 that she contracted *588 Hepatitis B from the blood transfusions in 1975. In fact, as she sought medical care, her testimony indicates that she always included in her medical history that she had Hepatitis B before. Thus, it was only when she was informed by her physician in 1998 that she learned that she had Hepatitis C and that the source of that disease might be related to the 1975 blood transfusions.
Similar to Anderson, the plaintiff in Turnage contracted Hepatitis non-A, non-B from a blood transfusion administered while giving birth. Shortly after her hospitalization, the plaintiff was tested for Hepatitis A and B, and both results were negative. At that time, the plaintiff's doctors diagnosed her with Hepatitis non-A, non-B, which is now known as Hepatitis C. "Plaintiff and her doctors believed at that time, as they do today, that the hepatitis was contracted from blood used in the blood transfusion at Lakeside Hospital." Turnage, 731 So.2d at 920. In 1996, Mrs. Turnage was diagnosed with Hepatitis C by her physician. Recognizing that Hepatitis non-A, non-B was now known as Hepatitis C, the trial court granted the defendants' exceptions of prescription, finding that the plaintiff was put on notice in 1974 that she had contracted Hepatitis C. As a result, her claim had prescribed, and the fifth circuit affirmed. Though the "doctors did not diagnose her with Hepatitis C, which was unknown at the time, ... they did diagnose a form of hepatitis which was probably a result of the blood transfusion." Id. at 922. The fifth circuit found that the "plaintiff had knowledge of her condition as far back as 1975, and the doctrine of contra non valentem [was] not applicable in [that] case." Id.
Mrs. Bourque was diagnosed with neither Hepatitis C nor Hepatitis non-A, non-B in 1975, but was diagnosed with Hepatitis B. When she was diagnosed in 1998, Mrs. Bourque was not aware that she had Hepatitis C nor could she have reasonably concluded that the Hepatitis C was causally connected to the blood transfusions in 1975, when she was told that she had Hepatitis B as a result of the transfusions. Equally important is the fact that the plaintiff in Turnage clearly knew that she did not have Hepatitis A or Hepatitis B from her test results unlike Mrs. Bourque. Mrs. Turnage was never under the impression that she had a disease other than Hepatitis non-A, non B or Hepatitis C. Thus, we find that Turnage is distinguishable from this case before us.
We find that the plaintiffs have adequately met their burden by demonstrating that a plaintiff cannot be precluded from asserting a claim for a completely different disease diagnosed at a later time, from one contracted previously. Mrs. Bourque's own testimony adequately supports her claim. Thus, the trial court erred in granting the exceptions of prescription because plaintiffs' claim was filed timely, within one year from the time the injury was discovered.

IV.

CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of the defendants, Louisiana Health Systems Corporation d/b/a Lafayette General Hospital and Blood Systems, Inc. d/b/a United Blood Services is reversed. Judgment is hereby entered in favor of the plaintiffs, Nelson and Bertha Bourque. Costs of this appeal are assessed against the defendants-appellees.
REVERSED AND REMANDED FOR TRIAL ON THE MERITS.
NOTES
[1] According to Mrs. Bourque, the doctor informed her that she was diagnosed with serum hepatitis in 1975. She believed that serum hepatitis was the same as Hepatitis B.