STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CA 0321

**MATTHEW and JESSICA ORGAN**

**VERSUS**

**CARLOS J. JUAREZ INDIVIDUALLY and CARLOS J. JUAREZ
D/B/A CARLOS J. JUAREZ CARPENTRY, LLC**

Judgment Rendered:___**NOV 0 7 2025**___

* * * * * * *

On Appeal from the 22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court Docket Number 2021-14618, Div. "H"

Honorable Allan A. Zaunbrecher, Judge Presiding

* * * * * * *

Coleman T. Organ
Metairie, Louisiana

Counsel for Plaintiffs/Appellants,
Matthew and Jessica Organ

Carlos J. Juarez, *Pro Se*
Mandeville, Louisiana

Counsel for Defendant/Appellee,
Carlos J. Juarez

* * * * * * *

**BEFORE: THERIOT, PENZATO, AND BALFOUR, JJ.**

**PENZATO, J.**

Plaintiffs appeal a judgment rendered on October 17, 2024, wherein the trial court ruled in their favor and against defendants in the amount of $1,000.00, plus interest from the date of judicial demand until paid. On appeal, plaintiffs seek an increase in the amount of damages awarded as well as additional damages for inconvenience. After review, we affirm.

## FACTS AND PROCEDURAL HISTORY

A bench trial was held on August 12, 2024 to determine whether defendants, Carlos J. Juarez, individually, and d/b/a Carlos J. Juarez Carpentry, LLC (collectively, "Mr. Juarez"), are liable to plaintiffs, Matthew and Jessica Organ, for faulty workmanship concerning repairs performed by Mr. Juarez on a second-floor balcony (hereafter referred to as a "deck"[1]) on the Organs' home. The Organs sought damages for the costs of repairs, inconvenience, loss of use, diminution in value, and loss of enjoyment of their home.[2] The following facts were established at trial:

In 2018, the Organs noticed puddling on the surface of their deck, softness in the wood, and wet spots underneath. Mr. Organ explained there was "bellying" and "a couple of spots that needed to be corrected." He was unsure what caused the bellying; however, he believed there was a water intrusion problem.

Mr. Organ personally "demoed" the top of the deck by first removing the deck boards. Once the boards were up, Mr. Organ saw rot in the areas where puddling occurred. He did not remove or replace the rotten wood beneath the deck boards. Mr. Organ next installed "ZIP tech orange plywood" between the joists. He explained that ZIP tech is a roof deck system, which is plywood "impregnated"

---

[1] At trial the parties referred to the balcony as a "deck." We do the same to maintain consistency.

[2] The Organs filed a petition for damages in October 2021 against Mr. Juarez. Mr. Juarez, appearing through counsel, answered the petition and admitted the parties entered a contract for "a repair and installation.[]" He otherwise denied the Organs' allegations and asserted several affirmative defenses. Mr. Juarez's counsel withdrew from the representation in July 2023. Mr. Juarez thereafter has represented himself, including at trial.

with a waterproof membrane. Mr. Organ inserted a sheet of the ZIP tech between each joist and taped the seams to create a waterproof barrier to "mitigate any continued water damage" and allow time to "come up with a plan on how to fix it." However, Mr. Organ testified that he was not a certified ZIP tech installer and had never installed the product before. Puddling continued, and the deck remained in this condition, with ZIP tech and seam tape and no surface deck boards, until the Organs contracted with Mr. Juarez in 2020.

Mr. Organ testified that he and Mr. Juarez, an experienced carpenter, agreed that Mr. Juarez would install ice and water shield, correct any puddling that was occurring, and install replacement deck boards. Mr. Organ stated that, before work began, Mr. Juarez removed the ZIP tech to "examine the rot" and determine what else needed to be done. Mr. Organ recalled that Mr. Juarez recommended replacing the beam running on the outside front of the deck. This was added to the scope of Mr. Juarez's work, raising the total cost from $1,750.00 to $2,950.00. Although some of the boards near the outside beam were also damaged, Mr. Organ testified that no other boards were replaced because the rot was "not significant[.]" Mr. Juarez put a self-leveling agent along the front of the deck and installed new surface deck boards. Mr. Juarez completed his work in May 2020.

Within a month, the Organs noticed puddling in the same places on the deck when it rained. The Organs contacted Mr. Juarez and told him about the continued puddling, but he did not return to their home until 2022, after suit was filed. At that time, the deck boards were removed, revealing that some nails were not placed into the joists and had penetrated the ice and water shield installed by Mr. Juarez. Additionally, there were no nails in some areas.

Mr. Juarez testified that the deck boards need to be nailed into the joists, and nailing outside of the joists is incorrect. He confirmed that water would be allowed to flow through the holes and into the deck if nails missed the joists and penetrated

3

the ice and water shield. Mr. Juarez admitted that it was improper workmanship if his crew installed nails with the ice and water shield without going through the joist. He candidly acknowledged that fault would be attributed to himself and his crew if this caused or contributed to further erosion of the quality of the deck.

Most significantly, Mr. Juarez testified that he pointed out pre-existing rot to Mr. Organ and told him it needed to be fixed. Mr. Juarez stated that Mr. Organ inquired about the price, then stated he did not have the money. When Mr. Juarez found more rotten areas, Mr. Organ asked the price to fix the whole deck. Mr. Juarez verbally gave Mr. Organ an estimate of $10,000.00 to "fix it properly." According to Mr. Juarez, Mr. Organ could not pay that amount and gave him the "thumbs up to close it back up." During trial, Mr. Juarez was asked whether he told Mr. Organ that the rot that was going to be covered up would impair his deck. Mr. Juarez testified, "Yes, I did. It was going to continue shifting, moving in any way, and water is going to start puddling." Mr. Juarez testified that, when Mr. Organ told him that puddling continued after the work was complete, he knew the cause – it was the pre-existing rot he discussed with Mr. Organ.

On redirect, Mr. Organ recalled a conversation with Mr. Juarez regarding beams with "slight, minor damages" and denied there was any "significant" or "structural" rot. Mr. Organ testified that Mr. Juarez told him that he could close it up and that he did not need to do "this" right now, presumably meaning Mr. Organ did not need to replace the beams with "very minor damage." Mr. Organ acknowledged that Mr. Juarez told him, "[y]ou might have a problem down the road long-term but nothing like within the next six months you are going to have rotten boards all over the place." Mr. Organ stated that he would not have gone ahead with the repairs if Mr. Juarez had told him the beams would continue to get worse if they were covered.

4

Eventually, Mr. Organ, along with a new contractor, decided the entire deck should be demolished and rebuilt to eliminate "this problem" and to avoid having "to do this again" in the near future. Mr. Organ explained the deck was rebuilt by William "Willie" Martin, a carpenter, using marine grade treated plywood. Wood was installed running one way then taped; a second layer of plywood was installed going in the opposite direction, creating an elevated surface for installation of the final surface deck boards (rather than nailing the deck boards directly to the joists as Mr. Juarez had done per the parties' agreement). This allowed Mr. Martin to penetrate the top layer of plywood instead of "impacting" the ice and water shield.

At trial, the Organs tendered Mr. Martin as an expert in the fields of framing and deck construction and demolition. However, the trial court declined to accept Mr. Martin as an expert, "not so much because of his qualification but because his opinions are of no import to this Court[.]" Mr. Martin's testimony was limited to what he did and saw at the Organs' home to demolish and rebuild the deck, including creating a drip system within the structure of the deck so that water drained out of the porch (using two layers of plywood as described by Mr. Organ).

Testimony and evidence established that the Organs paid $24,985.98 to demolish and rebuild the deck. The Organs introduced documentary evidence, primarily consisting of invoices and photographs of the deck in various stages of demolition and repair. After the conclusion of evidence and testimony, the trial court took the matter under advisement. Thereafter, the Organs proffered Mr. Martin's affidavit, setting forth the testimony he would have provided if he had been allowed to testify as an expert.

On October 17, 2024, the trial court rendered judgment in favor of the Organs and against Mr. Juarez in the amount of $1,000.00, plus judicial interest from the date of demand until paid. In written reasons, the trial court explained that it found a "small portion of the work performed by [Mr. Juarez] was defective and contrary"

to the parties' verbal agreement. Specifically, the court concluded that the Organs proved that a "small number of nails driven by [Mr. Juarez] failed to hit an underlying stud." However, in the court's opinion, the Organs failed to prove by a preponderance of the evidence that the misapplied nails caused the underlying floor joists to rot.

The trial court found Mr. Juarez's testimony established the presence of significant pre-existing rot. The trial court expressly found that Mr. Juarez was credible and accepted his testimony that he warned Mr. Organ there was still rot and that rot would continue, but Mr. Juarez was told to go ahead and do the work. Finally, the trial court concluded that the extensive subsequent repairs for which the Organs sought compensation were not proven to have been caused by the minimal deficiencies shown in Mr. Juarez's work. Instead, the alleged repairs were a "significant 'betterment' and unrelated to the limited scope of [Mr.] Juarez's work."

The trial court awarded the Organs $1,000.00 as compensation for damage caused by Mr. Juarez's failure to drive all nails into the studs, including all associated tear out and replacement costs. The trial court declined to award any sums for alleged inconvenience, loss of use, diminution in value, and loss of enjoyment, finding the Organs failed to prove by a preponderance of the evidence that these damages were legally caused by Mr. Juarez's defective work.

The Organs timely filed this appeal, asserting the trial court erroneously failed to: (1) apply the inference of faulty workmanship set forth in *Joyner v. Aetna Casualty & Surety Co.*, 259 La. 660, 251 So.2d 166, 167-68 (La. 1971); (2) accept Mr. Martin as an expert; (3) award damages for reconstruction of the deck; and (4) award damages for inconvenience. Mr. Juarez did not file an appeal brief.[3]

_____

[3] This court advised Mr. Juarez on April 3, 2025 that no provision in the law allows representation of a limited liability corporation by a non-attorney in the appellate courts of this state. Thus, as a non-attorney, Mr. Juarez was not allowed to file pleadings or appear as an advocate for Carlos J. Juarez Carpentry, LLC before this court. No brief has been filed on behalf of Carlos J. Juarez Carpentry, LLC.

## DISCUSSION

### *Failing to Accept Mr. Martin as an Expert*

Any alleged evidentiary errors must be addressed first on appeal, since this court must conduct a *de novo* review if the trial court committed an evidentiary error that interdicted its fact-finding process. See *Thompson v. Transocean Offshore Deepwater Drilling, Inc.*, 2019-0440 (La. App. 1st Cir. 2/21/20), 293 So.3d 80, 84, *writ denied*, 2020-00802 (La. 10/14/20), 302 So.3d 1115. The decision to admit or exclude expert testimony is within the sound discretion of the trial court, and its judgment will not be disturbed by an appellate court unless it is clearly erroneous. *Thompson*, 293 So.3d at 86.

The Organs argue the trial court "erred in not allowing [Mr.] Martin to give his opinions simply because the court did not dispute his qualifications."[4] The Organs cite no legal authority for their position, which is contrary to the well-settled principle that "the ultimate determination of the admissibility of expert testimony under [La. C.E.] art. 702 turns upon whether it would assist the trier of fact to understand the evidence or to determine a fact in issue." *Thompson*, 293 So.3d at 86; *Carpenter v. Thomas*, 2022-0872 (La. App. 1st Cir. 3/13/23), 362 So.3d 977, 983. Louisiana Code of Evidence article 702(A)(1) states, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if [...] [t]he expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*[.]" (Emphasis added.)

In *Hattori v. Peairs*, 95-0144 (La. App. 1st Cir. 10/6/95), 662 So.2d 509, 513, *writ denied*, 95-2677 (La. 1/12/96), 666 So.2d 322, the trial court declined to admit

---

[4] The Organs assert that the trial court's "cryptic" statement that Mr. Martin's opinions are "of no import" did not comply with La. C.C.P. art. 1425(F)(3). However, this provision sets forth the *pretrial* procedure a party may follow to challenge a witness's qualification as an expert and the requirements for the content of the trial court's *pretrial* ruling. There is no authority to expand the scope of this article to apply to rulings made during trial.

testimony from the defendants' proposed use of force expert, finding the testimony was not necessary. Without specifically concluding whether the witness was qualified as an expert, this court found no abuse of the trial court's discretion and no error in the court's conclusion that testimony on the issue of use of force was not needed to aid the trial court in making the factual determination of whether the defendants acted reasonably. *Hattori,* 662 So.2d at 514, citing La. C.E. art. 702, 1988 Comment (c). This comment explains that, under Article 702, whether expert testimony is admissible turns upon whether it would assist the trier of fact to understand the evidence or to determine a fact in issue. Article 702 permits the expert to testify as to such matters if the court concludes that his testimony would be helpful to the trier of fact. La. C.E. art. 702, 1988 Comment (c).

In *Anderson v. Beauregard Memorial Hospital,* 97-1222 (La. App. 3d Cir. 3/6/98), 709 So.2d 283, 287, a medical malpractice action, the trial court concluded that expert testimony from a pathologist was not necessary to make the factual determination of when the plaintiff discovered she was infected with hepatitis C for purposes of ruling on defendants' exceptions of prescription. The pathologist's qualifications were not at issue; however, the court of appeal found no error in the trial court's decision, noting the pathologist had never treated the plaintiff and had no knowledge of when she discovered she was infected. Therefore, the testimony had no bearing on whether the plaintiff's claim was prescribed. *Anderson,* 709 So.2d at 287. The court of appeal stated, "The prescription fact boils down to one issue: When did [the plaintiff] find out she was infected with hepatitis C?" *Anderson,* 709 So.2d at 286.

In their appeal brief, the Organs assert it is "essential" for this court to evaluate one "linchpin issue" on which the trial court based its decision, i.e., "To what extent did pre-existing rot contribute to the damage ultimately sustained." We agree this was the focus of the trial court's written reasons and judgment. We also agree with

8

the trial court's conclusion that expert testimony from Mr. Martin was "of no import" and would not aid the trial court in making this factual determination. Regardless of Mr. Martin's qualifications, his testimony had no bearing on whether and to what extent rot existed at the time Mr. Juarez performed and completed the deck repairs and/or the conversations between Mr. Juarez and Mr. Organ about the long-term consequences of leaving the existing rot. Mr. Martin's knowledge of the condition of the Organs' deck was based on his observations years after Mr. Juarez's work was completed. Thus, we find the trial court did not abuse its discretion by refusing to qualify Mr. Martin as an expert. See *Thompson*, 293 So.3d at 86.

### *Failing to Apply the Joyner Inference*

On the merits, the Organs assert the trial court failed to apply the inference of faulty workmanship articulated in *Joyner*, 251 So.2d at 167, a premises defect case. The Organs maintain that, under *Joyner*, Mr. Juarez was required to prove that the defects and damages resulted from something other than his work, since the defects in the Organs' deck appeared within one month after Mr. Juarez completed the repairs.

In *Joyner*, the Louisiana Supreme Court considered whether the contractor and/or the premises owner had the burden to prove that the injury-causing defect resulted from faulty construction or from misuse after completion of the contract and delivery to the owner. The court of appeal placed the burden on the owner. *Joyner*, 251 So.2d at 167. On review, the supreme court noted that, in so holding, the court of appeal "overlooked that, under the [present] circumstances, an inference of faulty workmanship or material arises when construction designed as a permanent installation fails shortly after being put into use." *Joyner*, 251 So.2d at 167-68.

The *Joyner* court granted rehearing and, in a per curiam opinion, clarified its holding concerning the inference of faulty workmanship:

> This holding was not intended to modify the requirement that before this inference of fault arises, the party claiming injury must establish by a preponderance of the evidence that after the construction left the control of the contractor upon its delivery to the owner, no fault independent of the contractor's workmanship or material (such as the injured party's own fault) caused the failure. The party injured must also, of course, prove by such preponderance that his damages were caused by reason of the failure of construction.

*Joyner*, 251 So.2d at 172 (on rehearing).

Thus, before any inference of fault arises, *Joyner* required the Organs to first establish by a preponderance of the evidence that no fault, independent of Mr. Juarez's workmanship or material, caused damage to the deck after Mr. Juarez's work was completed and the deck was returned to the Organs. The Organs were also required to prove, by a preponderance of the evidence, that their damages were caused by the failure of construction. *Joyner*, 251 So.2d at 172 (on rehearing). This is consistent with the owner's burden of proof articulated in more recent cases involving faulty workmanship. Specifically, to recover damages against a builder for faulty workmanship, the owner must prove by a preponderance of the evidence that: 1) a defect exists; 2) faulty materials or workmanship caused the defect; and 3) the cost of repairing the defect. *Pinnacle Builders, Inc. v. Gilbert*, 2021-0335 (La. App. 1st Cir. 12/22/21), 340 So.3d 107, 113.

The trial court's factual determination of whether the Organs proved the damage to their deck was caused by Mr. Juarez's alleged unworkmanlike performance is reviewed under the manifest error standard.[5] See *Pinnacle Builders, Inc.*, 340 So.3d at 113. When factual findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in

---

[5] To reverse a factfinder's determination under this standard, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 2014-2592 (La. 12/8/15), 193 So.3d 1110, 1115-16.

demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 2014-2592 (La. 12/8/15), 193 So.3d 1110, 1116.

As stated above, the trial court credited the testimony of Mr. Juarez rather than Mr. Organ concerning two critical facts: there was significant pre-existing rot, and Mr. Juarez advised Mr. Organ the rot would continue, but Mr. Organ told Mr. Juarez to go ahead and do the work. See *Hayes Fund*, 193 So.3d at 1116 (when a factual finding is based on the trier of fact's decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong).

On appeal, the Organs urge this court to apply the *de novo* standard of review, due to the trial court's purported failure to apply the *Joyner* inference, and to then credit Mr. Organ's testimony. However, it is clear the trial court found the Organs did not satisfy their burden of proving that the full extent of the damage to their deck was caused by Mr. Juarez's failure to drive a "small number" of nails into the joists. See *Joyner*, 251 So.2d at 172 (on rehearing). Because the Organs did not satisfy their initial burden of proof, the inference articulated in *Joyner* did not arise.

The Organs argue that, even under the manifest error standard, Mr. Juarez's testimony should be deemed not credible, because his testimony "makes no sense." They cite *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La. 1989), holding:

> Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.

The circumstances relied on by the Organs do not satisfy this standard. The record contains no documents or objective evidence that contradicts Mr. Juarez's testimony,

nor is his testimony internally inconsistent or implausible on its face. Instead, the Organs focus on what they contend is or is not reasonable to *believe*. For instance, they question whether it is "reasonable to believe" they told Mr. Juarez to cover up the rot after he told them the deck would continue to deteriorate, since their home is "expensive" and they agreed to pay more to Mr. Juarez to replace the front outside beam, as he recommended. The Organs also pose the question of whether a contractor, who was notified that a problem appeared immediately after his work was complete but who refused to return to the job, is a "credible individual." Conversely, they assert that Mr. Organ's testimony "makes sense." These arguments go to the essence of credibility and ignore that, where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. See *Hayes Fund*, 193 So.3d at 1116.

After reviewing the record in its entirety, we find no manifest error in the trial court's credibility determinations and factual conclusions. Accepting Mr. Juarez's testimony as true, it is reasonable to conclude that only a small portion of Mr. Juarez's work was defective and did not cause the extensive rot, which the Organs maintain required a complete tear-down and reconstruction of their deck.

### Failure to Award Damages for Reconstruction of the Deck and Inconvenience

The Organs argue the trial court erred by failing to award the full costs of reconstructing their deck after concluding that some of the nails driven by Mr. Juarez missed the studs and penetrated the ice and water shield.

If a contractor does not execute the contract in the agreed upon matter, he will be liable for damages that may ensue from his breach of the contract.[6] See La. C.C. art. 2769; *Caronna v. Outdoor Living, LLC*, 2023-1048 (La. App. 1st Cir. 12/30/24),

---

[6] Every building contract implicitly obligates the contractor to perform the work in a good, workmanlike manner, free from defects in either materials or workmanship, with the work suitable for its intended purpose. See La. C.C. arts. 1994 and 2769; *Caronna*, 403 So.3d at 1179.

12

403 So.3d 1164, 1179. It is only where the defects are such that they cannot be corrected except by removing and replacing the construction that the jurisprudential remedy is to award whatever it takes to place the homeowner in the position he deserved to be in when the construction was completed, as if the obligation had been fulfilled. *Caronna*, 403 So.3d at 1179.

We have already concluded that no manifest error exists in the trial court's factual determination that only a small portion of Mr. Juarez's work was defective.[7] Therefore, we find no error in the trial court's decision to limit the Organs' damages accordingly, compensating them for the damages caused by Mr. Juarez's failure to drive all nails into the studs, including all associated tear out and replacement costs. Additionally, the record supports the trial court's factual conclusion that the subsequent repairs to the Organs' deck were a significant betterment and were not necessitated by the minimal deficiencies in Mr. Juraez's work. Both Mr. Organ and Mr. Martin testified that the preexisting deck was entirely demolished and was replaced with a deck constructed of multiple layers of marine grade plywood to form a drip system.

Regarding damages for inconvenience, the Organs acknowledge they did not present testimony on this issue. Nevertheless, they assert the trial court erred by failing to award damages for inconvenience. After review, and in light of our holdings, we find no error in the trial court's refusal to award damages for inconvenience. In addition to the minimal damage attributed to Mr. Juarez's deficient work, the record contains no evidence that the contract was intended to gratify a non-pecuniary interest and that Mr. Juarez knew or should have known that his failure to perform would cause that kind of loss. See La. C.C. art. 1998;

---

[7] For this reason, we also reject the Organs' alternative argument that damages in the amount of $11,774.76 should be awarded, representing the amounts paid to Mr. Juarez, the costs of materials for Mr. Juarez's work, the purchase of materials for the new deck, and one-third of the labor costs for the deck reconstruction.

*Matherne v. Barnum*, 2011-0827 (La. App. 1st Cir. 3/19/12), 94 So.3d 782, 791, *writ denied*, 2012-0865 (La. 6/1/12), 90 So.3d 442. This argument lacks merit.

## CONCLUSION

We affirm the trial court's October 17, 2024 judgment in favor of Matthew and Jessica Organ and against Carlos J. Juarez, individually and d/b/a Carlos J. Juarez Carpentery, LLC in the amount of $1,000.00, plus interest from the date of judicial demand until paid. All costs of this appeal are assessed against plaintiffs/appellants, Matthew and Jessica Organ.

**AFFIRMED.**