STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-1366

BERTHA B. BOURQUE, ET AL.

VERSUS

LOUISIANA HEALTH SYSTEM CORP.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 990,997
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and Glenn
B. Gremillion, Judges.

AFFIRMED.

Keith D. Jones
Jones, Aaron & Smith
8480 Bluebonnet Blvd., Suite F
Baton Rouge, LA 70810
(225) 763-6900
Counsel for Plaintiff/Appellant:
    Bertha B. Bourque
    Nelson J. Bourque

**Nicholas Gachassin, Jr.**
**Elizabeth S. Faul**
**Julie Savoy**
**Gachassin Law Firm**
**200 Corporate Blvd., Suite 103**
**Lafayette, LA 70508**
**(337) 235-4576**
**Counsel for Defendant/Appellee:**
      **Louisiana Health System Corp.**

**Peter Elliot Sperling**
**Kathryn Motez Caraway**
**Nairda Teresa Colon**
**3600 Energy Centre**
**1100 Poydras Street, Suite 300**
**New Orleans, LA 70163**
**(504) 599-8227**
**Counsel for Defendant/Appellee:**
      **Blood Systems, Inc.**

GREMILLION, Judge.

In this case, the plaintiffs, Bertha and Nelson Bourque, appeal the judgment of the trial court granting summary judgment in favor of the defendants, Louisiana Health Systems Corporation (LHSC) and Blood Systems, Inc. For the following reasons, we affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

In 1975, following a motorcycle accident, Bertha received a blood transfusion allegedly containing the hepatitis C virus from Lafayette General Hospital (now owned by LHSC). In 1999, the Bourques filed a strict products liability suit against LHSC, and LHSC, in turn, filed a third party demand against Blood Systems, Inc., the supplier of the blood to LHSC. Blood Systems was thereafter made a defendant.

In 2003, the defendants filed Exceptions of Prescription, which were granted by the trial court, but reversed on appeal. *Bourque v. Louisiana Health Sys., Corp.*, 03-56 (La.App. 3 Cir. 4/30/03), 845 So.2d 584, *writs denied*, 03-1866, 03-1882 (La. 10/31/03), 857 So.2d 480, 481. Following remand, the defendants filed motions for summary judgment in October 2005, pursuant to an absolute defense based on a comment to Section 402A of the Restatement (Second) of Torts. The trial court granted the defendants' motions for summary judgment and dismissed the Bourques' case with prejudice. A judgment was rendered in December 2005. The Bourques now appeal.

## ISSUES

The Bourques' sole assignment of error is that the trial court erred in

1

ruling that comment k to Section 402A of the Restatement (Second) of Torts provides an absolute defense in a strict products liability case brought pursuant to the Louisiana Supreme Court's ruling in *DeBattista v. Argonaut-Southwest Insurance Co.*, 403 So.2d 26 (La.1981), *cert. denied*, 459 U.S. 836, 103 S.Ct. 82 (1982), where the plaintiff contracted hepatitis C from a blood transfusion she received from defendants.

## DISCUSSION

The law pertaining to summary judgment was discussed by the Louisiana Supreme Court in its per curium opinion in *Hines v. Garrett*, 04-0806, pp. 1-2 (La. 6/25/04), 876 So.2d 764, 765-66 (alteration in original):

> We review a district court's grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Summary judgment is warranted only if "there is no genuine issue as to material fact and [ ] the mover is entitled to judgment as a matter of law." La.Code Civ.Proc. art. 966(C)(1). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor.
>
> A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Smith v. Our Lady of the Lake Hosp., Inc.,* 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730,751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id.*

Whether a fact is material is determined in light of the relevant substantive law. *Weingartner v. La. IceGators*, 02-1181 (La.App. 3 Cir. 4/17/03), 854 So.2d 898, *writ denied*, 03-1388 (La. 9/19/03), 853 So.2d 645.

Pursuant to La.Code Civ. Proc. Art. 966(C)(2):

The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

The trial court stated in the instant case in a minute entry following the trial:

The court finds *DeBattista v. Argonaut-Southwest Insurance Co., 403 So.2d 26 (La.1981)*, applies prospectively to all cases tried subsequently to its ruling, and necessarily including the case at bar. However, and contrary to Plaintiff's position, defenses do exist to strict liability cases involving blood transfusions. This court accepts the "unavoidably unsafe" defense found in Comment k of the Restatement (Second) of Torts Section 402A and further finds there was no test available for Non A Non B Hepatitis (Hepatitis C) in 1975, and specifically when Mrs. Bourque received her transfusion. Her claim for failure to warn also falls for the same reason.

Furthermore, if the failure to warn is a separate cause of action it would surely have prescribed. This court was obviously imprecise in its earlier ruling on the exception of prescription which did not allow the Court of Appeal to consider that cause of action separately.

§402A of the Restatement (Second) of Torts provides for liability of the seller of a product that causes physical harm to a user or consumer. It states:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

3

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Comment k states:

> *Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justified the marketing and use of the drug notwithstanding a medically recognizable risk. *The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonably risk.*

(Emphasis added).

Although this case involves several debatable issues, the Bourques limited their assignment of error to whether comment k to Section 402A provides an "absolute" defense in a strict products liability case brought pursuant to *DeBattista.* The Bourques argue that the defendants failed to prove the comment k defense. However, the Bourques then go on to complain of evidence that the defendants failed to produce to them. Indeed, the record is replete with affidavit and deposition

evidence that, at the time of the transfusion, hepatitis C was unknown and there was no test available to screen donated blood for the virus. At the conclusion of their brief, the Bourques state that the trial court effectively overruled *DeBattista* by finding that comment k to § 402A provided an absolute defense.

LHSC urges that the trial court was correct in finding that the comment k defense was available in the matter and in finding that the defendants established a prima facie case that the blood transfused to Bertha was unavoidably unsafe by showing it met the five *Chauvin* criteria.[1] LHSC argues that when the burden shifted to the Bourques to prove that they could meet their burden at trial, they were unable to produce any affidavit or deposition to support their allegations.

Blood Systems agrees that summary judgment was properly granted; however, it argues that the trial court erred in relying on the strict liability statutes. Blood Systems urges that strict liability for defective blood transfusions did not exist in 1975, and that courts applied a negligence standard until the *DeBattista* ruling in 1981. Blood Systems argues that *DeBattista* does not apply to this case as the trial court found.

In *Seal v. St. Tammany Parish Hospital Service District No. 1*, 99-2914 (La.App. 1 Cir. 1/27/00), 848 So.2d 1, *reversed*, 00-1489 (La. 6/30/00), 765 So.2d 1057, the appellate court held that the plaintiffs could not maintain a cause of action in strict liability against the defendant arising out of a blood transfusion occurring in 1973. However, the supreme court reversed the judgment of the court of appeal for the reasons assigned by then Judge, now Justice, Weimer in his opinion dissenting

---

[1] *Chauvin v. Sisters of Mercy Health Sys., St. Louis, Inc.*, 01-1834 (La.App. 4 Cir. 5/8/02), 818 So.2d 833, *writ denied*, 02-1587 (La. 9/30/02), 825 So.2d 1194.

from the majority. Judge Weimer stated:

> In *DeBattista*, the defendants contended that the danger presented by the blood was reasonable because the screening test used to detect Hepatitis B, a known contaminant, was not one hundred (100%) percent effective, and that this relatively small percentage of unwholesome blood which the test could not detect was not unreasonably dangerous in comparison to the larger amount of blood which had properly been screened given the social utility of the blood. This is a different argument than is being presented by defendants in the instant case, i.e., that blood is unavoidably unsafe, and thus not unreasonably dangerous, when it is contaminated by an unknown and undiscovered virus for which a screening test did not exist at the time of the transfusion. That the defendants' arguments in *DeBattista* were rejected should not be interpreted to foreclose all arguments in which the risk presented by blood is contend to be reasonable.

> . . . .

> In sum, the plaintiffs are entitled to submit their case based on a theory of strict liability and the defendants are entitled to present a defense relative to whether a blood transfusion, given in 1973, which is alleged to be the cause of the plaintiff's Hepatitis C, was "unavoidably unsafe." *See* Restatement of Law of Torts (Second) Section 402(A), comment k.

*Id.* at 2-3 (citations omitted).

Later, in *Chauvin*, 818 So.2d 833, the plaintiff allegedly contracted hepatitis C in 1963 following a blood transfusion and filed suit alleging the defendants were liable under strict liability. The trial court granted summary judgment in favor of the defendants. Affirming the ruling, the appellate court stated:

> Hepatitis C was unknown in 1975. *Turnage v. Columbia Lakeside Hospital,* 98-1263 (La.App. 5 Cir. 3/30/99), 731 So.2d 919, 922 [, *writ denied*, 99-1299 (La. 6/18/99), 745 So.2d 26]. *Per force*, it was unknown in 1963. Prior to the time that it was specifically identified as Hepatitis C, it was lumped in the category of non-A non-B Hepatitis. Even this category was unknown in 1963. As its existence was unknown, no test existed in 1963 to detect it. In 1963 no steps would have been taken to prevent what was not known to exist. Regardless, the plaintiffs insist they are entitled to recover under a theory of strict liability.

6

*Id.* at 835. The appellate court later stated:

> *DeBattista* contains several references to comments g and i under § 402A, but none to comment k. Comment k sets forth the "unavoidably dangerous" defense to strict liability. This Court strongly agrees with the need to consider comment k and the "unavoidably unsafe" defense suggested by the Supreme Court's remand in *Seal* [.]

*Id.* at 840.

The *Chauvin* court then went on to find that the presence of hepatitis C in the plaintiff's transfusion in 1963, was an unavoidably unsafe condition for which the defendants could not be held liable. Next, the *Chauvin* court discussed the lack of a cause of action in strict liability in 1963 explaining:

> [The supreme court in *Williams v. Jackson Parish Hospital,* 00-3170 (La.10/16/01), 798 So.2d 921)] explained, as noted already, that it was not until the 1981 decision in *DeBattista* that, "Louisiana became one of the handful of states that imposed strict liability on hospitals (as opposed to blood banks ) for defective blood transfusion."
>
> . . . .
>
> [T]he legislature reacted quickly to overrule *DeBattista:*
>
>> Subsequently, the legislature added Civil Code article 2322.1 and R.S. 9:2797 granting physicians, hospitals and blood banks immunity from strict tort liability for screening, processing, transfusion or medical use of blood and blood components of any kind which results in transmission of **viral disease undetectable by appropriate medical and scientific laboratory tests.**
>
>> . . . .
>
> [T]he blood shield laws were enacted in quick response to what our survey of the jurisprudence shows was a single groundbreaking case *DeBattista*. Prior to *DeBattista* there were no cases imposing such [strict] liability. Such few cases as there were prior to *DeBattista* uniformly rejected such liability.
>
> Not only is it obvious that no 1963 Louisiana court would have afforded the plaintiff a strict liability cause of action under the facts of

7

this case, it is equally certain that the legislature would have opposed such claims because when *DeBattista* made the great leap forward it was promptly overruled by the legislature.

Accordingly, there is no public policy to be advanced by affording retroactive relief to the plaintiffs under this case[.]

*Id.* at 844-46 (citations omitted; emphasis in original).

Although we agree with Blood Systems for the reasons enunciated in *Chauvin* that Bourque's claim is not properly founded in strict liability, this issue was not assigned as error, and ultimately does not change the result that in 1975, the risk of contracting hepatitis C from a blood transfusion was "unavoidably unsafe," as proven by the multiple affidavits and deposition testimony submitted by the defendants. At the time, hepatitis C was unknown to the medical community and there was no test to detect it. The hepatitis C virus was first identified in 1989, and the first test to detect antibodies to the virus became available in 1990. The Bourques offered no evidence to the contrary suggesting that a genuine issue of material fact existed, thus the defendants' motions for summary judgment were properly granted.

We note that the Bourques make a last ditch argument that the blood in this case was not "properly prepared" nor was Bertha "properly warned" as required by comment k. Again, for the reasons discussed above, one cannot properly prepare or market, nor properly warn against something that is unknown. Thus, the situation does not call for proper preparation, marketing, or warning because the hepatitis C virus was unknown. This argument fails for the same reason.

**CONCLUSION**

The judgments of the trial court granting summary judgment in favor of the defendants-appellees, Louisiana Health Systems Corporation and Blood Systems,

Inc., is affirmed.  All costs of this appeal are assessed to the plaintiffs-appellants, Bertha and Nelson Bourque.

**AFFIRMED**.