620 So.2d 1154 (1993)
Outher COLE, et al.
v.
CELOTEX CORPORATION, et al.
No. 93-C-0090.
Supreme Court of Louisiana.
July 1, 1993.
William B. Baggett, Jr., William B. Baggett, Lake Charles, for applicant.
William C. Harrison, Robert E. Kerrigan, Jr., Arthur W. Stout, III, Janet L. MacDonell, Kelvin G. Sanders, Gary B. Roth, Deutsch, Kerrigan & Stiles, Lawrence G. Pugh, Jr., Montgomery, Barnett, Brown, & Read, New Orleans, David L. Tolin, Beaumont, TX, Christopher P. Ieyoub, Plauche, Smith & Nieset, Lake Charles, Richard L. Forman, Forman & Perry, Jackson, MS, Michael T. Cali, Lemle & Kelleher, Edwin A. Ellinghausen, III, Porteous, Hainkel, Johnson & Sarpy, Russell D. Holwadel, *1155 Adams & Johnston, New Orleans, William T. McCall, Guillory & McCall, Lake Charles, James L. Pate, Ben L. Mayeaux, Laborde & Neuner, Lafayette, Stephen P. Hall, Phelps Dunbar, J. Michael Johnson, Galloway, Johnson, Tompkins & Burr, New Orleans, Kenneth R. Spears, Jones, Tete, Nolen, Hanchey, Swift & Spears, Lake Charles, for respondent.
MARCUS, Justice.[*]
Mr. and Mrs. Wilburn L. Robertson and others filed suit on December 22, 1987, against several manufacturers of asbestoscontaining products and the executive officers of their employer, Cities Service Oil Company (Cities Service).[1] Plaintiffs alleged that they had been diagnosed with asbestosis as a result of their occupational exposure to asbestos-containing products in the course of their employment. Owens-Illinois, Inc. and Pittsburgh Corning Corporation, joined by GAF Corporation, National Gypsum Company, United States Gypsum Company, Keene Corporation and Quigley Company, filed an exception of prescription to the claims of Mr. and Mrs. Robertson. The trial judge granted the exception of prescription and dismissed the suit of Mr. and Mrs. Robertson against all defendants joined in the exception. The court of appeal affirmed.[2] We granted certiorari to review the correctness of that decision.[3]
The exception of prescription was submitted on briefs, the deposition testimony of Mr. Robertson and Dr. Bonnie R. Camp and documentary evidence.
Mr. Robertson began working with Cities Service as a carpenter in 1950. He was promoted in about 1974 to maintenance foreman, the position from which he retired in December of 1984. Cities Service maintained a medical record on Mr. Robertson consisting of periodic examinations including chest x-rays and diagnosis and treatment by the company physician. This record reveals that in 1955, Mr. Robertson was diagnosed with pleurisy or early pneumonia. He testified that he did not recall having these illnesses. In 1979, he was told by the company physician, Dr. Swafford, that "something showed up on his chest x-ray" and that it was "pleurisy or pneumonia or something like that." The medical record supports this testimony. Mr. Robertson was placed in the company's Asbestos Survey Program, an annual monitoring program consisting of pulmonary function tests, chest x-rays, and a physical examination as well as a questionnaire filled out by the employee concerning his state of health. The annual results of the Asbestos Survey Program also became part of Mr. Robertson's medical record.
After 1979, Mr. Robertson continued to be monitored on a yearly basis. His chest x-rays for 1980 and 1981 were normal. In 1982, because of pleural thickening and calcification revealed by his x-ray, Mr. Robertson was told to stay away from asbestos even with a respirator.
After his annual examination and chest x-ray in 1983, Mr. Robertson was referred by the company physician, Dr. Camp, to Dr. Jana Kaimal, a pulmonologist, for further examination. In a letter from Dr. Kaimal to Dr. Camp dated July 19, 1983, Dr. Kaimal stated that Mr. Robertson had evidence of asbestos related lung disease but he did not recommend any treatment other than monitoring with x-rays. Mr. Robertson testified that he did not read the letter or receive a copy of it. Dr. Camp consulted with him in August of 1983 and *1156 discussed the findings of his x-ray and asbestos and respiratory examination and told him that the plaque or scarring revealed on his x-ray could be the result of asbestosis or other causes. Mr. Robertson testified that when he asked her if he had asbestosis, she replied in the negative. He stated that Dr. Camp suggested that he should wear a mask at all times when he was working around the plant. In 1983, as in past years, in the annual "Asbestos and Respiratory Questionnaire" filled out by Mr. Robertson, he answered that he had no ill effects from his work and had not been treated for any respiratory related diseases.
Dr. Camp testified that she discussed Mr. Robertson's examination and chest x-ray as well as the findings of Dr. Kaimal with him in August of 1983. She explained that she did not diagnose asbestosis but informed him that the findings of his chest x-ray could be the result of several causes:
Q: Is it fair to say that you discussed these other possible causes of his radiologic findings, besides asbestosis?
A: Yes.
Q: Again, at that time, you, yourself, had not made a diagnosis of asbestosis?
A: I wouldn't make that diagnosis myself.
. . . . .
A: I don't remember the exact conversation. I remember talking to him about the x-ray and telling him that it could be asbestos or it could be other causes.
Mr. Robertson continued to be examined on a yearly basis. Dr. Camp testified that his chest x-ray results were essentially the same in 1984 as in 1983. In December of 1984, Mr. Robertson retired but continued to participate in the Asbestos Survey Program. Although he requested his medical records which lists Dr. Kaimal's letter of July 19, 1983 in December of 1984, his testimony and that of Dr. Camp's is conflicting as to whether he actually received Dr. Kaimal's letter. Mr. Robertson's chest x-ray of May of 1985 remained unchanged from that of the previous year. The medical records contain a notation that Dr. Camp's secretary called Mr. Robertson about the results of the 1985 x-ray.
Mr. Robertson testified that he picked up his medical records from Cities Service to take them to his attorney in December of 1985. His attorney referred him to Dr. Van Campen. Mr. Robertson testified that the first time he was told he had asbestosis was by Dr. Van Campen. Plaintiff filed suit on October 22, 1986, in federal court.
The issue presented for our review is when the one year period of liberative prescription applicable to tort actions under La.Civ.Code Art. 3492 commenced to run.
Defendants contend that Mr. Robertson had actual notice that he had an asbestosrelated condition on numerous occasions between 1979 and May of 1985 and suit filed in October of 1986 was untimely. Plaintiffs contend that Mr. Robertson was not diagnosed with asbestosis until December of 1985 when he went to see Dr. Van Campen and prescription would commence to run at that time. Thus, the suit was timely filed. The courts below concluded that Mr. Robertson had actual or constructive notice of his alleged asbestos-related lung disease in August of 1983 (when he consulted with Dr. Camp regarding Dr. Kaimal's examination) or in December of 1984 (when Mr. Robertson was allegedly provided with a copy of the July 19, 1983 letter of Dr. Kaimal). For the reasons set forth below, we find that plaintiffs' suit has not prescribed.
La.Civ.Code Art. 3492 provides that delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. Damage is considered to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action. McCray v. New England Insurance Co., 579 So.2d 1156 (La.App.2d Cir.1991).
The doctrine of contra non valentem agere nulla currit praescriptio prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff. It is often difficult to identify a precise point in *1157 time at which the claimant becomes aware of sufficient facts to begin the running of prescription. In re Medical Review Panel of Howard, 573 So.2d 472 (La.1991).
In Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987), we stated:
Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.
Jordan, 509 So.2d at 423. As stated in Knaps v. B & B Chemical Co., Inc., 828 F.2d 1138, 1140 (5th Cir.1987) (decided shortly after Jordan and relying upon that case), the question is whether, in light of plaintiff's own information and the diagnoses he received, the plaintiff was reasonable to delay in filing suit.
Mr. Robertson's medical records reveal that in 1955 he was diagnosed with pleurisy or early pneumonia. Mr. Robertson testified that he was told in 1979 by the company physician that something showed up on his chest x-ray that could be pleurisy or pneumonia or something like that. The company placed Mr. Robertson along with other employees in an Asbestos Survey Program and told Mr. Robertson to stay away from asbestos while working at the plant. From 1979 until 1986, Mr. Robertson continued to be monitored on an annual basis. He testified that during this period he had no ill effects or symptoms associated with asbestosis. Even in 1983 after the referral by Dr. Camp to Dr. Kaimal, Mr. Robertson testified that Dr. Camp told him that the plaque on his lungs which showed up on his x-ray at that time could be due to several causes besides asbestosis. This was confirmed by the testimony of Dr. Camp.
Defendants argued and the courts below found even if Mr. Robertson could not be chargeable with knowledge that he had asbestosis in 1983, then he was chargeable with knowledge at least by December of 1984 when the medical records showed that he received a copy of Dr. Kaimal's letter which stated that Mr. Robertson had evidence of asbestos-related lung disease.[4] Mr. Robertson contends that he was not shown the letter nor ever requested a copy of it until he obtained his entire medical record from Cities Service in December of 1985. Notwithstanding whether he actually received the letter in 1984, we do not find that the letter would constitute knowledge that Mr. Robertson actually had asbestosis since Dr. Camp had met with Mr. Robertson in August of 1983 and discussed the letter of Dr. Kaimal and told him that his x-ray findings could be the result of several causes besides asbestosis.
Based upon the totality of the circumstances, we find that Mr. Robertson was never diagnosed with asbestosis by any physician until he met with Dr. Van Campen in late 1985 or early 1986. In August of 1983, after being examined by Dr. Kaimal, Mr. Robertson was told by Dr. Camp that the findings on his chest x-ray could be the result of several causes besides asbestosis. From 1983 until 1985, Mr. Robertson was told by Dr. Camp during his annual examinations that his chest x-rays remained essentially unchanged. Mr. Robertson never saw his medical record until late 1985 or early 1986. Even if he had, we conclude that there was no diagnosis of asbestosis in his medical record. Mr. Robertson relied upon what was told to him by Dr. Camp as well as his own subjective state of health which was that he never had any ill effects or symptoms related to asbestosis. The company monitored *1158 him and several other employees in the Asbestos Survey Program commencing in 1979 but never considered that any treatment related to the findings on his chest xrays was necessary.
In sum, we conclude that Mr. Robertson cannot be chargeable with knowledge that he had asbestosis until late 1985 or early 1986. Hence, his delay in filing suit was reasonable and his cause of action against defendants has not prescribed. The trial judge was manifestly erroneous in holding otherwise. The court of appeal erred in affirming the judgment of the trial court. We must reverse.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to the district court for further proceedings. All costs are assessed against defendants.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Watson, J. (recused) was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] The plaintiffs in the original suit were Outher W. Cole, Wilson James Cormier, Dewey Derouen, Zeodore Orphy, Wilfred Richmond Painter, John Perry and Wilburn L. Robertson and their respective spouses. Each plaintiff and spouse previously had filed separate suits in the United States District Court for the Western District of Louisiana based on the same causes of action against some of the same defendants in the state court action. Mr. and Mrs. Robertson's federal suit was filed on October 22, 1986. According to the court of appeal opinion, in 1989, the federal action was dismissed, without prejudice, as of non-suit.
[2] 611 So.2d 153 (La.App. 3d Cir.1992).
[3] 614 So.2d 1246 (La.1993).
[4] Mr. Robertson's medical record contains a "Checklist for Proper Documentation of Request for Access to Records" which lists Dr. Kaimal's letter of July 19, 1983. This checklist is marked "Page 4." Another document called "Signature Form for Documentation of Release of Records" is signed by Mr. Robertson and dated December 28, 1984. The "Summary of Request" on said document is blank. This document is marked "Page 5." Pages 1, 2 and 3 are not in the record.