656 So.2d 683 (1995)
Jeffrey M. BOYD, Plaintiff-Appellant
v.
B.B.C. BROWN BOVERI, INC., et al., Defendant-Appellees.
No. 26889-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
Rehearing Denied June 15, 1995.
*684 M.F. Fayard, Jr., Bossier City, for appellant Jeffrey M. Boyd.
Vicki C. Warner, Mayer, Smith & Roberts, Shreveport, for appellees Gould, Inc., B.B.C. Brown Boveri, Inc.
James C. McMichael, Jr., Blanchard, Walker, O'Quin & Roberts, Shreveport, for appellees Monsanto Co. and Monsanto Enviro-Chem. Systems, Inc.
Bobby S. Gilliam and Penny D. Sellers, Wilkinson, Carmody & Gilliam, Shreveport, for appellees Southwestern Elec. Power Co., et al.
Jerald N. Jones, Office of the City Atty., Shreveport, for appellees the City of Shreveport.
Before MARVIN and HIGHTOWER, JJ., and GUIDRY, J. Pro Tem.
GUIDRY, Judge Pro Tem.
On April 22, 1993, Jeffrey M. Boyd filed a suit against Louisiana State University Medical Center and other companies for damages for personal injury allegedly resulting from exposure to toxic chemicals. The defendants filed peremptory exceptions of res judicata and prescription. On February 11, 1994, the trial court heard the exceptions and subsequently sustained the defendants' exception of prescription. Having dismissed plaintiff's suit as prescribed, the trial court did not consider nor issue any ruling on the exception of res judicata. Plaintiff appeals. For the following reasons, we affirm.

*685 FACTS
The record reflects that on April 3, 1987, Shreveport firefighters responded to an early morning alarm at the Louisiana State University Medical Center (LSUMC) power plant in Shreveport, Louisiana. Jeffrey M. Boyd was one of the firefighters who responded to the call. Apparently, an electric transformer had ruptured and leaked fluids containing toxic substances, including Polychlorinated Biphenyls (PCBs) and dioxins, onto the generator located one floor below. A great deal of smoke containing the toxic substances was generated.
On March 31, 1988, Boyd and other firefighters filed several suits against the medical center and other companies. Four suits were consolidated. The plaintiffs in the consolidated actions alleged that they were damaged as a result of their exposure to toxic chemicals during the aforementioned incident at the LSU Medical Center.
Dr. Helmut Redetzki, a toxicologist, headed the team of LSUMC physicians who examined the firefighters. He concluded that none of the plaintiffs exhibited any signs or symptoms of acute toxicity due to exposure to PCBs. Dr. Gots, another toxicology expert, concluded that the degree of the firefighters' exposure was not sufficient to cause any medical problems or long-term effects. Dr. May, a physician employed by the City of Shreveport, examined Boyd and performed a fat biopsy. He also indicated that there was no connexity between Boyd's unexplained ailments and his exposure to the PCBs and dioxins.
On April 17, 1989, the trial court entered a pre-trial scheduling order requiring that each plaintiff firefighter provide within ninety days medical proof of his exposure to toxic substances and of the injuries sustained. Mr. Byron A. Richie, plaintiffs' attorney, wrote letters to each of his clients and requested medical information and documentation of their claims. The first letter was written on May 16, 1989; a second letter was written on June 22, 1989; and a third letter was sent by certified mail on August 9, 1989. Mr. Richie informed his clients that litigation would be costly and that the defense had them "outgunned" in terms of manpower and money. He reiterated to his clients the difficulty of proving their claims and the danger of a dismissal if they did not present some evidence to substantiate their claims.
On January 3, 1990, the defendants filed a motion seeking dismissal of plaintiffs' actions and attorney's fees against those plaintiffs failing to comply with the scheduling order. A hearing on the matter was set for February 5, 1990. The defendants contacted Mr. Richie offering not to seek attorney's fees if the non-complying plaintiff firefighters would agree to voluntarily dismiss their actions with prejudice. On January 29, 1990, Mr. Richie began calling his clients to advise them of the offer by defendants. On January 30 Mr. Richie, on behalf of his clients, including Jeffrey Boyd, sent a Motion to Dismiss to the Clerk of Court. On January 31, 1990, the trial judge signed a judgment dismissing the claim of Jeffrey M. Boyd and seven other plaintiffs, with prejudice.
On July 23, 1991, Boyd was diagnosed with cancer of the thyroid gland, i.e., follicular cancer. On July 29, 1991, Dr. Charles R. Byrd removed 70 percent of Boyd's thyroid gland and informed Boyd that he did not have the training or expertise to determine the cause of the cancer.
Boyd retained present counsel, Mr. M.F. "Rick" Fayard, in late 1991. Allegedly, counsel informed him that he could not revive his claim unless a medical expert could substantiate the causal connexity between plaintiff's PCB exposure and the thyroid cancer.
Boyd's medical records were sent to Dr. Arthur Zahalsky, an immunotoxicologist. Dr. Zahalsky wrote a letter on May 13, 1992, stating that "[Boyd's] memory functions and abilities of his immune compartment have been damaged." On November 4, 1992, upon Dr. Zahalsky's recommendation, Boyd and a control group of four firefighters not exposed to PCBs submitted blood samples to Dr. Peter McConnachie, Director of Immunotoxicology at the Memorial Medical Center in Springfield, Illinois. After running tests, Dr. McConnachie determined that "[t]here is clear evidence of bone marrow damage due to PCB" and "abnormalities of the immunological tests of Boyd are consistent with bone *686 marrow precursor and B-cell progenitors being affected by exposures to PCB (Aroclors)." On December 1, 1992, he wrote a letter informing Boyd of his conclusions.
On April 22, 1993, Boyd filed a petition seeking damages allegedly resulting from his exposure to toxic substances, including PCBs, which occurred on April 3, 1987. His suit was entitled Jeffrey M. Boyd v. B.B.C. Brown Boveri, Inc., et al (4 consolidated cases). In his petition, Boyd made essentially the same allegations he made in the prior suit. The named defendants were virtually the same as those named in the aforementioned suit.
The defendants filed exceptions of res judicata and prescription. The trial court sustained the defendants' exception of prescription concluding that prescription on Boyd's cause of action began to toll on July 23, 1991, the date he was diagnosed with thyroid cancer. The trial court concluded that on July 23, 1991, Boyd had knowledge sufficient to commence the period of prescription under LSA-C.C. Art. 3492 and, thus, his petition filed April 22, 1993, was not timely. The trial court, finding against the plaintiff on the issue of prescription, did not reach the issue of res judicata. Plaintiff appealed.

PRESCRIPTION
Assuming for purposes of this assignment that res judicata is not a bar to the present claim, we consider whether the trial court correctly held that prescription commenced to run on the date Boyd was diagnosed with thyroid cancer as opposed to the date a medical expert wrote a letter substantiating Boyd's claim of causal connexity between his exposure to PCBs and the cancer.
Generally, the burden of proving that the suit has prescribed rests with the party pleading prescription. Burdeaux v. Cline, 626 So.2d 1205 (La.App.2d Cir.1993). However, when the plaintiff's petition reveals on its face that prescription has run, and the plaintiff relies upon suspension or interruption of prescription, the burden is on the plaintiff to prove suspension or interruption. Id; Wimberly v. Gatch, 93-2361 (La. 4/11/94), 635 So.2d 206.
The incident upon which Boyd's claim is premised took place on April 3, 1987. The instant suit was filed on April 22, 1993, six years after the incident. On the face of the petition, Boyd's claim is prescribed, thus, the burden to establish suspension or interruption rests with Boyd.
Boyd argues that his delay in filing suit was reasonable and under the doctrine of contra non valentem agere nulla currit praescriptio, prescription was suspended until December 1, 1992, the date he first became aware of the causal connexity between his illness and his exposure to PCBs. He argues that he filed suit within five months of the commencement of the running of prescription, well within the prescriptive period.
Delictual actions are subject to a liberative prescription of one year, which commences to run from the day injury or damage is sustained. LSA-C.C. Art. 3492. Damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support the accrual of the cause of action. Id; Cole v. Celotex, 620 So.2d 1154 (La.1993). In cases where the damage is not immediately apparent, however, prescription begins to run from the time a reasonable person under similar circumstances would have become aware of both the tort and the damages. Wilson v. Hartzman, 373 So.2d 204 (La.App. 4th Cir.1979), writ denied, 376 So.2d 961 (La.1979); Richardson, Jr. v. Avondale Shipyards, Inc., 600 So.2d 801 (La.App. 5th Cir.1992). Where a progressive occupational disease is involved, prescription begins to run when the disease has manifested itself and the victim is aware of it. Watkins v. J. Ray McDermott, Inc., 466 So.2d 636 (La.App. 5th Cir.1985); Richardson, Jr. v. Avondale Shipyards, Inc., supra.
Prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished; of two possible constructions, that which favors maintaining, as opposing to barring, an action should be adopted. Lima v. Schmidt, 595 So.2d 624 (La.1992). In order to mitigate occasional harshness of the operation of prescriptive statutes our courts have implemented *687 the jurisprudential principle of contra non valentem. Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992). Pursuant to this principle, prescription does not begin to run until plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant. Burdeaux v. Cline, supra. Under the doctrine of contra non valentem, prescription does not run against one who is ignorant of the facts upon which his cause of action is based as long as his ignorance is not willful, negligent or unreasonable. Id.
Boyd suspected that he had a claim against the defendants as early as 1988. This is clearly evidenced by the fact that he filed suit on March 31, 1988, setting forth the same claim against virtually the same defendants as those in the instant case. As he was unable, at that time, to establish that he suffered any injury as a result of his exposure to PCBs, he reluctantly acquiesced in a dismissal of his claim with prejudice. On July 23, 1991, when Boyd was diagnosed with follicular cancer, his suspicions were again aroused. The record reveals that he inquired as to the cause of his cancer, and Dr. Charles Byrd, the surgeon who removed the malignancy, stated that he did not have the training or expertise to determine the cause of Boyd's cancer. The record further reflects that Boyd consulted his present counsel, Mr. Fayard, in late 1991 regarding his claim against those he deemed responsible for his April 3, 1987, exposure to PCBs.
Allegedly, Mr. Fayard informed Boyd that he had no chance of establishing his claim without the evidentiary support from a medical expert. It was not until December 1, 1992, that Boyd received such evidentiary support from Dr. McConnachie, the immunotoxicologist who ran tests on blood submitted by Boyd and a control group of firefighters who were not exposed to PCBs. According to Boyd, the date upon which scientific proof came into existence regarding the causal connexity between his exposure to PCBs on April 3, 1987 and his illness is the date when prescription began to run against his cause of action. In support of his contention, plaintiff points to recent cases decided by our supreme court.
In Branch v. Willis-Knighton Medical Center, 92-3086 (La. 4/28/94), 636 So.2d 211, the court held that the applicable one-year prescriptive period did not commence until plaintiffs discovered the damage, the delict and their relationship. The plaintiff in Branch filed suit against a hospital alleging that the hospital was liable for damage caused to them by the contaminated blood sold to the plaintiffs over thirteen years earlier in 1976. It was not until September 6, 1989, that Branch was diagnosed as having hepatitis C contracted from the blood sold to him by the hospital in 1976. The Louisiana Supreme Court determined that the running of prescription was suspended under the doctrine of contra non valentem until the plaintiffs discovered the existence of their claim on September 6, 1989. It determined the date on which Branch was diagnosed as having hepatitis C as the date on which the plaintiffs discovered the existence of their claim.
In Cole v. Celotex Corp., 620 So.2d 1154 (La.1993), the plaintiff filed suit against manufacturers of asbestos-containing products. The Louisiana Supreme Court held that, under the one-year period of liberative prescription applicable to tort actions, damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support accrual of the cause of action.
In Cole, the plaintiff began working as a carpenter in 1950 and was regularly exposed to asbestos on his job. He was diagnosed in 1950 with pleurisy or early pneumonia. In 1979, he was told by the company physician that he had pleurisy or pneumonia or "something like that." The plaintiff was placed in his company's Asbestos Survey Program and was monitored on a yearly basis. In 1982, the plaintiff was told to stay away from asbestos, even with a respirator, because of pleural thickening and calcification. In 1983, the plaintiff was referred to a pulmonologist, who stated that the plaintiff had evidence of asbestos related lung disease but did not recommend any treatment. The plaintiff was told by his other doctor in August of 1983 that his condition could be the result of asbestosis or other causes, but the *688 doctor replied in the negative when the plaintiff asked if he had asbestosis.
The Louisiana Supreme Court concluded in Cole that plaintiff's delay in filing suit was reasonable and that the action had not prescribed where the plaintiff was not definitively diagnosed with asbestosis until late 1985 or early 1986, and prior to that time, he had been told on various occasions that x-ray findings of plaque on his lungs could be the result of several causes besides asbestosis.
In Branch and Cole, the court determined that, in light of the plaintiff's own information and the diagnoses he received, the plaintiff acted reasonably in delaying the filing of suit. See also Knaps v. B & B Chemical Co., Inc., 828 F.2d 1138, 1140 (5th Cir.1987). In both cases, the date of diagnosis was designated as the date on which the plaintiff had information sufficient to alert him to his cause of action and commence the running of prescription.
In the instant case, Boyd argues that he was not aware of his cause of action until the date on which he was given medical information confirming the etiology of his illness which was diagnosed and treated many months earlier. Boyd argues that several factors coalesced to make it unreasonable for him to rush out and file the present suit against LSU and the other defendants with nothing whatsoever to support his claim. His attorney in the prior suit discouraged him from pursuing the claim because of the cost involved and the difficulty of proving his claim. With regard to the prior suit, the defendants' experts met with Boyd and other firefighters to convince them that their exposure to the PCBs and dioxins on April 3, 1987 was neglible and would not have long term effects. The doctors who examined Boyd at that time found no connection between his exposure to PCBs and his unexplained ailments. Boyd essentially asserts that his cause of action began to run when he had substantive proof to support his claim.
The trial court disagreed, concluding that the prescriptive period commenced on July 23, 1991 when Boyd was diagnosed with cancer. We find no manifest or clear error in this conclusion.
Damage suffered should be at least actual and appreciable in quality, that is, determinable and not merely speculative. Harvey v. Dixie Graphics, Inc., supra. A plaintiff is not required to rush out at the earliest indication of a problem and file suit against all parties who might have caused him damage. Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987). However, there comes a point when the plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury. Id.
The question is whether, in light of plaintiff's own information and the diagnosis he received, the plaintiff was reasonable to delay filing suit. We conclude that Boyd had constructive knowledge of his cause of action on July 23, 1991 when diagnosed with thyroid cancer. The tests of blood and bone marrow that plaintiff had made in late 1992, could have been made and the results obtained within the one-year period after July 23, 1991, the date that plaintiff knew he had a malignancy. Plaintiff's action, filed on April 23, 1993, was untimely because the one-year liberative prescription tolled on plaintiff's claim on July 24, 1992.
An injured party need not have actual knowledge of his condition for purposes of starting the statute of limitations for delictual actions, as long as there is "constructive notice," that is information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry. Richardson v. Avondale Shipyards, Inc., supra. In Harlan v. Roberts, 565 So.2d 482 (La.App. 2d Cir.1990), writ denied, 567 So.2d 1126 (La.1990), this court held that the plaintiff's aggressive efforts to seek some relief from the defendant-dentist for her unsatisfactory dental work evidenced constructive, if not actual, knowledge of alleged malpractice to commence the running of the one-year prescriptive period. The Harlan court determined that, at the latest, prescription began to run when the plaintiff demanded compensation for her problems and indicated that she would consult an attorney shortly thereafter. Clofer v. Celotex Corporation, 528 So.2d 1074 (La.App. 5th Cir.1988).
Following the reasoning of Harlan, Boyd had constructive knowledge when he first *689 consulted an attorney prior to his first suit. At the very latest, he had information sufficient to commence the running of prescription on the date he was diagnosed with thyroid cancer. On that date, his prior suit, his awareness of the alleged tort, and his knowledge of the injury sustained, combined to constitute notice of his cause of action against the defendants. Although the evidentiary proof necessary to successfully establish plaintiff's right to damages may not have been secured until December 1, 1992, proof of a cause of action cannot be equated with knowledge, actual or constructive. It is the latter which governs the date on which prescription begins to run. Gulf States Land & Development, Inc., et al v. Ouachita National Bank In Monroe, 612 So.2d 1031 (La. App. 2d Cir.1993), writ denied, 618 So.2d 406 (La.1993); and Maison Blanche, Inc. v. The Louisiana Department of Labor, Office of Employment Security, 604 So.2d 670 (La. App. 1st Cir.1992), writ denied (La.1992). At the latest prescription tolling against Boyd's tort action began to run on July 23, 1991. For these reasons we affirm. In light of this decision we pretermit any discussion of the issue of res judicata.

CONCLUSION
Accordingly, the judgment of the trial court sustaining the defendants' peremptory exception of prescription is affirmed at the cost of plaintiff-appellant.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, HIGHTOWER, WILLIAMS and STEWART, JJ., and GUIDRY, J., Pro Tem.
Rehearing denied.