**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 9, 2009

Charles R. Fulbruge III
Clerk

No. 09-30102

BURT H. KEENAN

Plaintiff - Appellant Cross-Appellee

v.

DONALDSON LUFKIN & JENRETTE, INC., DONALDSON LUFKIN &
JENRETTE INTERNATIONAL; DONALDSON LUFKIN & JENRETTE
SECURITIES CORP.; DLJ BRIDGE FINANCE, INC.; CREDIT SUISSE
FIRST BOSTON USA, INC.

Defendants - Appellees Cross-Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, and HIGGINBOTHAM and HAYNES, Circuit
Judges.

HAYNES, Circuit Judge:

This is the second time these parties have been before us on this case. *See
Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 529 F.3d 569 (5th Cir. 2008)
(reversing district court's grant of summary judgment under the Louisiana
Credit Agreement Statute) (hereinafter *Keenan I*). Following *Keenan I*'s remand,
the defendants again moved for summary judgment, this time asserting that this
case was filed after the expiration of the applicable Louisiana prescriptive

period, among other grounds. The district court granted summary judgment on the entire case, and Keenan again appealed. For the reasons set forth below, we AFFIRM in part, and REVERSE and REMAND in part.

## I. Factual Background

*Keenan I* describes the basic facts of this case, and we will not belabor them here. Suffice it to say that Keenan was a founder of Independent Energy Holdings PLC ("IE"). The defendant parties (collectively "DLJ Parties") acted in various financing and advisory capacities to IE. After experiencing cash flow problems, IE turned to a banking syndicate (of which one of the DLJ Parties was a member) to extend additional capital and forgive certain technical defaults of an existing credit facility. Keenan contends, and the DLJ Parties dispute, that the DLJ Parties promised that if he personally loaned $10 million to IE and raised $50 million of mezzanine financing,[1] they would waive the technical default of the existing credit facility and extend the credit facility from £ 165 to £ 190 million. On June 21, 2000, Keenan, not represented by counsel, loaned IE the money pursuant to a written agreement between IE and Keenan. The loan matured on October 1, 2000.

The syndicate waived the technical defaults but did not extend additional credit to IE. On August 4, 2000, Keenan presented $64 million in mezzanine finance commitments to DLJ. The syndicate then informed Keenan that they were no longer interested in the mezzanine finance plan and wanted, instead, to pursue a short sale of the company. The short sale to AES Corporation proceeded, but on September 7, 2000, the syndicate refused to lend IE any more money. IE then entered receivership in the United Kingdom, where IE conducted business. Although the credit facility was paid in full, Keenan recovered only 7% of his loan to IE through the receivership process. Keenan

---

[1] Mezzanine financing generally refers to subordinated debt senior only to common shares of a company.

contends that he did not know until 2005 that he would not be repaid in full through the receivership process.

On October 7, 2005, Keenan filed suit against the DLJ Parties in the Eastern District of Louisiana. Keenan's original complaint contained two counts—detrimental reliance and promissory estoppel under Louisiana law.[2] At the instigation of the district court, Keenan then conducted discovery to learn if he had a fraud claim as well. He contends that he eventually discovered that, when the 2000 promise described above was made, the DLJ Parties had no intention of honoring it. He then amended his complaint to add various fraud and breach of fiduciary duty claims. As we discussed above, the district court then granted summary judgment under the Louisiana Credit Agreement Statute ("LCAS"), which we reversed in *Keenan I*. The appeal in *Keenan I* addressed the LCAS. The DLJ Parties in that appeal also argued that the fraud and breach of fiduciary duty claims were barred by Louisiana's one-year prescription period, *see* LA. CIV. CODE art. 3492, but conceded that the detrimental reliance and promissory estoppel claims were governed by the ten-year prescriptive period for an action in contract. *See* LA. CIV. CODE art. 3499. We noted: "The district court did not address the limitations period issue. Because Keenan's two non-tort claims [detrimental reliance and promissory estoppel] are not barred, remand is necessary regardless of our determination on this issue." 529 F.3d at 579.

Despite initially conceding that the detrimental reliance and promissory estoppel claims were governed by the ten-year contractual prescription period (and therefore timely), on remand the DLJ Parties moved for summary judgment on prescription on these claims as well as the other claims that were based on fraud, negligence, and breach of fiduciary duty. Keenan argued that the detrimental reliance and promissory estoppel claims, as well as the breach of

---

[2] No party disputes the application of Louisiana law here.

fiduciary duty claim, were contractual in nature, and, thus, the one-year period did not apply. He conceded that fraud and negligent misrepresentation fell under the one-year period, but he argued that the period did not begin to run until he discovered facts showing that he had been defrauded. The district court ultimately decided that all claims were delictual in nature (and thus governed by the one-year statute); it further found that Keenan had sufficient knowledge of facts to trigger the start of the prescription period when his loan was not paid in 2000. Thus, the district court concluded that all claims were barred by the one-year prescription period. Summary judgment was granted, and Keenan appealed.

## II.  Standard of Review

We review grants of summary judgments de novo. *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 464 (5th Cir. 2005). Summary judgment is appropriate if, after making all inferences in favor of the non-movant, the record contains no genuine issue of material fact, and the movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(b); *Minter*, 423 F.3d at 464. We note that when a plaintiff should know of his cause of action is usually a question of fact. *Picard v. Vermilion Parish Sch. Bd.*, 783 So. 2d 590, 594 (La. Ct. App. 2001) ("[A] determination of whether or not the Plaintiffs were indeed prevented from filing their claim [by reason of lack of knowledge] . . . is an issue of fact."); *see also Ducre v. Mine Safety Appliances*, 963 F.2d 757, 760 (5th Cir. 1992) (reversing summary judgment because a fact question remained as to whether the plaintiff was reasonably ignorant of the facts upon which his claims were based).

## III. Discussion

### A. Prescription Period for Detrimental Reliance and Promissory Estoppel

The first contention Keenan makes is that the DLJ Parties' current arguments about the detrimental reliance and promissory estoppel prescription period are foreclosed by *Keenan I*. While we do not countenance the DLJ Parties' change of position necessitating another appeal and further work by the district court and this court, we cannot find that *Keenan I* forecloses this argument. Because prescription expressly was not reached by our court in the first appeal and thus was not decided on its merits, the references to prescription are not "law of the case" in this appeal. *See United States v. Hatter*, 532 U.S. 557, 566 (2001) ("The law of the case doctrine presumes a hearing on the merits.").[3]

Turning to the merits of this issue, the answer to this question turns on whether these two claims are viewed as contractual in nature – and thus governed by the ten-year period – or delictual in nature – and thus governed by the one-year period.[4] The question seems simple, but the answer is more complex. We have applied both statutes to claims denominated as "detrimental reliance" because the nature of the action, rather than its label, governs which statute applies. *Compare Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 479 (5th Cir. 2002) (applying one-year statute), *with Stokes v. Georgia-Pacific*

---

[3] We also conclude that the district court did not abuse its discretion in deciding that the DLJ Parties are not judicially estopped from asserting a new legal position here because the district court did not rely upon the prior inconsistent position. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

[4] This difference is dispositive as to these two claims because Keenan does not contend that he lacked knowledge of the breach of promise in 2000 when the syndicate failed to extend further credit. He claims only, as discussed further below, that he lacked knowledge of the fraud associated with that breach of promise. Under Louisiana law, an action in tort is governed by a one-year prescription period, and an action in contract, a ten-year prescription period. *Roger v. Dufrene*, 613 So. 2d 947, 948 (La. 1993) (citing LA. CIV. CODE art. 3492 & 3499).

*Corp.*, 894 F.2d 764, 770 (5th Cir. 1990) (applying ten-year statute) . In other words, "[w]hen evaluating which prescriptive period is applicable to a cause of action, courts first look to the character of the action disclosed in the pleadings." *SS v. State*, 831 So. 2d 926, 931 (La. 2002).

We conclude that Keenan's detrimental reliance and promissory estoppel claims derive from a breach of promise, like *Stokes*, rather than a breach of duty, like *Copeland*.[5] Accordingly, we conclude that the district court erred in

---

[5] The relevant allegations for promissory estoppel are the same as the following allegations from Keenan's complaint regarding detrimental reliance:

**Count Six: Detrimental Reliance**

163. Plaintiff repeats and incorporates herein the allegations contained in paragraphs 1 through 162 above as if fully set forth herein.

164. DLJ represented to Keenan that it would continue to give its support, including further credit and financial support, if necessary, to Independent Energy until such time as a long-term solution to Independent Energy's liquidity crisis was reached.

165. DLJ made this representation in order to induce Keenan to make a personal, unsecured loan of $10 million to Independent Energy.

166. On information and belief, no writings directly acknowledging this representation exist because such writings were destroyed or not retained by DLJ–in breach of its own policies and procedures and its legal obligations.

167. Keenan justifiably and reasonably relied on DLJ's representation.

168. In reliance on DLJ's representation, Keenan made an unsecured personal loan of $10 million loan [sic] to Independent Energy.

169. DLJ subsequently refused to extend further credit or financial support to Independent Energy.

170. As a direct and proximate result of Keenan's reliance on DLJ's representation, Keenan has suffered damages, in an amount to be proven at trial, because only a small portion of his $10 million loan has been repaid and he has recently learned that he will not receive full repayment through Independent Energy's liquidation process.

171. Keenan's damages were proximately caused by Keenan's detrimental reliance on DLJ's representation. But for DLJ's representation, he would not have made the $10 million loan to Independent Energy. Further, had DLJ honored its promise, and provided further credit and financial support, Independent Energy would have solved its billing problem, survived its liquidity crisis, and repaid Keenan's loan in full.

granting summary judgment in favor of the DLJ Parties on the defense of prescription to the promissory estoppel and detrimental reliance claims.[6]

## B.    Breach of Fiduciary Duty

We need not reach the question of which statute governs Keenan's breach of fiduciary duty claim because we agree with the DLJ Parties that no fiduciary duty was owed by them to Keenan.  As the DLJ Parties argue, there is simply no evidence of a fiduciary relationship, nor could there be as the claim is pled.[7] There is no evidence any DLJ entity was to act for Keenan's benefit regarding the loan, *see Scheffler v. Adams & Reese, LLP*, 950 So. 2d 641, 647 (La. 2007), and close personal relationships do not create such a duty, *see Kaplan v. Fine*, 643 So. 2d 438, 440 (La. Ct. App. 1994).  Thus, we affirm the district court's grant of summary judgment on the breach of fiduciary duty claim (Count Five) on the alternate ground that no fiduciary duty was owed by the DLJ Parties to Keenan.[8]

---

[6] The DLJ Parties also cross-appealed the district court's denial of their motion for summary judgment on the merits of these two claims.  We treat this as a request to affirm the summary judgment on an alternate ground.  However, we agree with the district court that fact  issues prevent the grant of summary judgment on the merits of these particular claims.

[7] The Louisiana Supreme Court quotes the following definition of fiduciary:

"Fiduciary" includes a trustee under any trust, expressed, implied, resulting or constructive, executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officers  of a corporation, public or private, public officer, or any other persons acting in a fiduciary capacity for any person, trust or estate.

*Scheffler v. Adams & Reese, LLP*, 950 So. 2d 641, 647-48 (La. 2007) (quoting LA. REV. STAT. ANN. § 9:3801(2)).

[8] We further hold that the district court's summary judgment remains in place on this same alternate ground with respect to any portion of Count Two (fraud by omission) that relies upon the existence of a fiduciary duty.

## C.    Fraud and Negligent Misrepresentation

Keenan admits that his remaining four claims sound in tort and are subject to the one-year prescription period.[9]   However, he contends that the period began to run when he discovered evidence of fraud in discovery (2006) rather than when he first learned DLJ breached the alleged oral agreement (2000).   We address the fraud-based theories separately from the negligence-based theories.

### 1.    Fraud and "Fraud by Omission"

Counts One and Two of the amended complaint allege, in essence, that the DLJ Parties committed fraud by making a promise without any intent to perform the promise.    Keenan considers this action both an affirmative misrepresentation and "fraud by omission."  However labeled, the critical feature of this kind of fraud is that the promisor lacks a present intent to perform the promise.  *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 975 F.2d 1192, 1205 (5th Cir. 1992) ("[T]o constitute actionable fraud a promise or representation of future actions must be made with the intention not to perform at the time the promise is made." (internal quotations and citations omitted)); *Sun Drilling Prods. Corp. v. Rayborn*, 798 So. 2d 1141, 1152 (La. Ct. App. 2001) ("Fraud may be predicated on promises made with the intention not to perform at the time the promise is made."); *Bass v. Coupel*, 671 So. 2d 344, 351 n.12 (La. Ct. App. 1995) ("We note that fraud may be predicated on promises made with the intention *not* to perform *at the time* the promise is made. . . . Fraud cannot be imputed, and simple broken promises alone are not sufficient. The fraud must be based on the person's intention not to perform.").

The question, then, is whether knowledge that a promise has not been kept is sufficient to trigger prescription for fraud claims based on those broken

---

[9] These claims are fraud, fraud by omission, negligent misrepresentation, and negligent omission.

promises. "Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Campo v. Correa*, 828 So. 2d 502, 510 (La. 2002); *see also Sudo Props., Inc. v. Terrebonne Parish Consol. Gov't*, 503 F.3d 371, 378 (5th Cir. 2007). Constructive notice means "notice enough to call for inquiry about a claim, not from the time when the inquiry reveals facts or evidence sufficient to prove the claim." *Lafleur v. Blue*, 6 So. 3d 348, 351 (La. Ct. App. 2009) (quoting *Terrel v. Perkins*, 704 So. 2d 35, 39 (La. Ct. App. 1997)). Under the doctrine of *contra non valentum*, the prescription period is tolled until the plaintiff knew or should have known of a cause of action. *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993); *see also Simmons v. Templeton*, 723 So. 2d 1009, 1012 (La. Ct. App. 1998) (holding that the claim had not prescribed because the plaintiff's ignorance was not "willful, negligent, or unreasonable.").[10]

Keenan argues that he did not understand he had a fraud claim until the August 2006 depositions of two DLJ bankers who admitted, in his view, their intent not to perform the promise when made. The district court ruled that Keenan knew of the fraud on October 2, 2000, when the loan was not paid after it became due, and if not then, on October 24, 2000, when Keenan delivered his claim to the receivership for IE demanding repayment of the loan. The district court reasoned that by this time, Keenan knew that the DLJ Parties would not keep their alleged promises and that repayment of his loan to IE was subject to a receivership process and possible nonpayment. The court distinguished *Sudo*

---

[10] The parties disagree as to whether the rule regarding commencement of the prescriptive period or the rule for tolling under the doctrine of *contra non valentum* controls. We need not reach this issue because, under the facts of this case, the analysis under either approach yields the same result. *See Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002); *Corsey v. State*, 375 So. 2d 1319, 1322 (La. 1979) (describing *contra non valentem* as "generically similar to instances provided by statute where prescription does not begin to run until the claimant has knowledge of his cause of action.").

*Properties* and ruled that because Keenan admits he knew of DLJ's breach, that Keenan simply decided not to bring a fraud claim until he knew that he would not be paid from the receivership. The claims were therefore prescribed. The court did not address Keenan's claim that he did not have constructive or inquiry notice until the August 2006 depositions.

The DLJ Parties contend that knowledge of a broken promise is enough to start limitations running (or defeat a claim of *contra non valentum*) on a "fraud by promise" claim. But this contention ignores the heart of this kind of fraud claim – the *present* intent not to perform. It is this present intention that avoids turning every breach of contract into a fraud claim. *See Automatic Coin Enters., v. Vend-Tronics, Inc.*, 433 So. 2d 766, 767-68 (La. Ct. App. 1983) ("A failure to make [a promise] good is merely a breach of contract." (internal quotations and citations omitted)). A breach of promise, standing alone, is not enough for a fraud claim. *Wright Bros. Corp. v. Colomb*, 517 So. 2d 1194, 1197 (La. Ct. App. 1987) ("[M]ere failure to perform a promise . . . without more, is not evidence of fraud."). Thus, knowledge of a breach of promise, standing alone, is not enough to "excite inquiry," start the running of the prescriptive period, or end the *contra non valentum* tolling period.[11]

The DLJ Parties have failed to prove as a matter of law[12] that Keenan knew of their present intention not to perform until within one year of his filing of the amended complaint.[13] Accordingly, we reverse the summary judgment on

[11] Similarly, the mere inclusion of the word "misrepresentation" in his original complaint does not establish as a matter of law that Keenan had constructive knowledge of facts indicating DLJ's intent not to perform the promise when made.

[12] The DLJ Parties cite certain ambiguous testimony by Keenan in another case in 2002 in support of their claim that no material fact issues exist. This testimony does not prove, as a matter of law, either that there was no promise in 2000 or that Keenan knew, by 2002, that such a promise was false.

[13] We recognize that the DLJ Parties deny ever making such a promise. For purposes of analyzing the prescription issue, of course, we assume that such a promise was made.

Counts One and Two (except to the extent Count Two is based upon a breach of fiduciary duty).[14]

## 2. Negligent Misrepresentation and Negligence by Omission

By contrast, Keenan's negligence claims do not require any intent to deceive or present intention not to perform a promise.[15] Instead, they are premised on a host of claimed failings in advising him in connection with making the loan.[16] Once Keenan knew that the credit facility was not extended and that his note matured without payment, he also knew that DLJ's advice was inaccurate. While he would not necessarily know of a wrongful intent on DLJ's part, he knew that DLJ's guidance was wrong. Thus, at that point, he had a duty to inquire further. His failure to do so promptly results in the loss of these claims due to the passage of the prescription period.

## D. LCAS

The DLJ Parties claim that discovery has produced sufficient evidence to reverse this court's holding regarding the applicability of the LCAS bar in *Keenan I*. It has not. We decline to revisit our prior opinion.

---

[14] Again, we decline the invitation to affirm on the alternate ground that Keenan's claims lack merit (except to the extent they rely upon a breach of fiduciary duty). While Keenan's claim that a sophisticated businessman such as he would conduct such a large transaction on a handshake is dubious, weighing credibility is not the office of a summary judgment motion.

[15] The elements necessary to establish a claim of negligent misrepresentation in Louisiana are: "(1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty, which can occur by omission as well as by affirmative misrepresentation; and (3) the breach must have caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation." *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir.), *cert. denied*, 129 S. Ct. 631 (2008).

[16] Keenan's allegations in support of his negligence claims essentially mirror those of his fraud claims, except that he asserts that "[b]y its negligence, DLJ breached its duty of reasonable care to Keenan . . . ."

## IV. Conclusion

Accordingly, we AFFIRM the district court's grant of summary judgment on Count Five (breach of fiduciary duty) and any portions of Count Two (fraud by omission) that rely upon the existence of a fiduciary duty; we further AFFIRM the district court's grant of summary judgment on prescription as to the negligence and negligent misrepresentation counts; in all other respects, we REVERSE the district court's judgment and REMAND for further proceedings consistent with this judgment.