# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30731
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2015

Lyle W. Cayce
Clerk

CINDA MCLAUGHLIN,

      Plaintiff - Appellant

v.

GLAXOSMITHKLINE, L.L.C.,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:12-CV-2946

Before PRADO, OWEN, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Cinda McLaughlin appeals the district court's grant of summary judgment on her products liability claims against Defendant-Appellee GlaxoSmithKline ("GSK").  We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30731

## I. Factual and Procedural Background

Plaintiff Cinda McLaughlin alleges that in 2003, she began taking Paxil to treat depression. Paxil was manufactured and marketed by GSK. Paxil is generally classified as a selective serotonin reuptake inhibitor, or SSRI. McLaughlin took Paxil until March 2007 and then switched to the generic equivalent, paroxetine, which was manufactured by other companies not present in this appeal. [1] On June 10, 2010, Dr. Robert Keith White surgically replaced two valves in McLaughlin's heart. Dr. White removed two specimens of the valves for pathological review, which McLaughlin alleges showed damage that was caused by cardiac exposure to increased levels of serotonin. McLaughlin had previously undergone coronary artery bypass surgery in January 2004, and alleges that no damage to her heart valves was present at that time. She alleges she continuously took Paxil and its generic equivalent from shortly before her January 2004 bypass surgery until her June 2010 valve replacement surgery, and that during that time she was not exposed to any other drug that could have caused the type of heart valve damage she suffered.

On October 4, 2010, McLaughlin visited the emergency department at the E.A. Conway Medical Center in Shreveport, complaining of severe anxiety. According to the emergency physician's notes from that consultation, McLaughlin said that she had been suffering from anxiety since Paxil was discontinued earlier that year, and that she had "heart valve damage due to it [Paxil]" and that she had heart valve surgery in June "due to Paxil." She was referred for a psychiatric consultation for her anxiety, which occurred two hours later with Dr. Nga Huynh. Dr. Huynh's notes of that consultation state that McLaughlin requested new medication for anxiety and explained that

---

[1] In addition to GSK, McLaughlin initially sued three manufacturers of generic paroxetine, Cadila Healthcare, Zydus Pharmaceuticals, and Apotex Inc., but she voluntarily dismissed those three defendants in October 2012.

"she was on Paxil for 10 years and had to stop taking it in August b/c a heart valve repair." McLaughlin also told Dr. Huynh that "her heart valve was damaged by Paxil" and that she "is currently in a lawsuit with them," presumably referring to the manufacturers of Paxil.

On October 22, 2010, McLaughlin's attorney, Susan Hamm, met with Dr. White, who had performed McLaughlin's valve replacement. Dr. White's report regarding the meeting states that Hamm was there "to visit because of product liability issues." Dr. White noted that after McLaughlin's valve replacement, examination and study of the valves showed what could have been "evidence of a drug induced aortic and mitral valve stenoses," or narrowing of the valve. Dr. White's report stated that he discussed McLaughlin's medication history with her at the time of her valve replacement, and "Paxil was the only medication that was apparently taken in the interim between her coronary artery bypass and her valve replacements." Dr. White's report stated that he told Hamm "he had no evidence or knowledge that [Paxil] caused abnormalities of the valves," but that Hamm "enlightened me that there was some evidence that this potentially could be the case." Dr. White's report concluded by stating that "I am here for my patient and I would like to do well for her and will help Ms. Hamm if need be and if appropriate to help document any evidence that could have been drug induced to cause valve failure."

On June 8, 2012, McLaughlin filed suit in the Eastern District of Pennsylvania alleging that ingestion of Paxil caused damage to her heart valves, which required valve replacement surgery. Her complaint alleged design, manufacturing and marketing defects, as well as breach of warranty, negligence and fraud claims. The suit was transferred to the Western District of Louisiana, where McLaughlin resides, where her doctors reside, and where the surgery occurred. GSK then moved to dismiss the complaint. The district

court concluded that Louisiana law, including the Louisiana Products Liability Act ("LPLA"), governed McLaughlin's claims.  The district court dismissed six of McLaughlin's ten claims because they fell outside the exclusive theories of recovery allowed by the LPLA.  The district court also dismissed McLaughlin's design defect claim because she had failed to allege sufficient facts to state a claim.    Following discovery, GSK moved for summary judgment on McLaughlin's remaining claims on the ground that the applicable one-year prescriptive barred those claims.    The district court granted summary judgment to GSK based on prescription.  On appeal, McLaughlin challenges only the district court's ruling that her three LPLA claims were prescribed.

## II.  Discussion

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists if, based on the evidence in the record, a reasonable jury could enter a verdict for the non-moving party. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 252 (1986).  We review a district court's grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party.  *Onoh v. Northwest Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010).

The parties do not dispute that Louisiana law governs this case.  Under the Louisiana Civil Code, the parties also agree that McLaughlin's products liability claims are subject to a one-year prescriptive period.  La. Civ. Code art. 3492 ("Delictual actions are subject to a liberative prescription of one year."). "Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Campo v. Correa*, 2001-2707 (La. 6/21/02), 828 So. 2d 502, 510; *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 489 (5th Cir. 2009). "Constructive knowledge is whatever notice is enough to excite attention and

No. 14-30731

put the injured party on guard and call for inquiry." *Campo*, 828 So. 2d at 510-11. It is clear that "evidentiary proof necessary to successfully establish plaintiff's right to damages" is distinguishable from facts giving rise to the plaintiff's knowledge of her claim; "proof of a cause of action cannot be equated with knowledge, actual or constructive." *Boyd v. B.B.C. Brown Boveri, Inc.*, (La. App. 2 Cir. 5/10/95), 656 So. 2d 683, 689. "In other words, the prescriptive period commences when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim." *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999) (citing *Terrel v. Perkins*, 96-2629 (La. App. 1 Cir. 11/7/97), 704 So. 2d 35, 39).

McLaughlin primarily argues that the prescriptive period did not begin to run until she had sufficient scientific evidence of a causal link between Paxil and her heart valve damage, which did not occur until a particular study was published in a medical journal in July 2011. But as we have previously recognized, "[t]he commencement of prescription does not necessarily wait for the pronouncement of a victim's physician or of an expert." *Luckett*, 171 F.3d at 300 (citing *Hunter v. Sisters of Charity of the Incarnate Word*, 236 So. 2d 565, 568 (La. Ct. App. 1970) (prescription commenced on plaintiff's medical malpractice claim when she fell out of her hospital bed, not when a chiropractor told her that the fall caused her pain)). "As a general rule, prescription begins to run from the time there is notice enough to call for inquiry about a claim, not from the time when the inquiry reveals facts or evidence sufficient to prove the claim." *Terrel*, 704 So. 2d at 39; *Keenan*, 575 F.3d at 489.

The evidence in the record, which is uncontradicted by McLaughlin, shows that she had at least constructive notice of her injuries and potential claims by October 2010. On October 4, 2010, McLaughlin told two doctors that Paxil had caused her heart valve damage, which had necessitated her June

2010 valve replacement.  The two doctors' notes from their consultations with McLaughlin show that she specifically reported that her heart valve surgery was "due to Paxil," that "her heart valve was damaged by Paxil," and that she was pursuing legal action against the manufacturer of Paxil.

Further, McLaughlin retained counsel in connection with her products liability claims regarding Paxil as early as October 2010.  On October 22, 2010, McLaughlin's attorney, Susan Hamm, met with Dr. White, the doctor who had performed McLaughlin's valve replacement, to discuss "product liability issues."  Dr. White's report of the meeting states that Hamm told him she had some information supporting a link between Paxil and McLaughlin's heart valve damage.  Louisiana courts have recognized that the act of retaining an attorney in connection with a claim can demonstrate that a plaintiff had adequate notice of an injury, sufficient for the prescriptive period to commence.  S*ee Med. Review Panel Proceeding of Williams v. Lewis*, 2008-2223 (La. App. 1 Cir. 5/13/09), 17 So. 3d 26, 29-30; *Clofer v. Celotex Corp.*, 528 So. 2d 1074, 1076 (La. Ct. App. 1988).

Thus, by October 2010 McLaughlin had told two physicians that her heart valve damage was due to Paxil and she had retained an attorney in connection with potential claims related to Paxil.  This undisputed evidence demonstrates that McLaughlin had sufficient knowledge of her claims to commence the one year-prescriptive period by October 2010.  McLaughlin's suit was not filed until June 2012, and the district court correctly held that her claims had prescribed.

McLaughlin also argues that the doctrine of *contra non valentem* suspended the running of the prescriptive period.  "Under the doctrine of *contra non valentem*, the prescription period does not run when 'the cause of action is not known or reasonably knowable by plaintiff, even though his ignorance was not induced by defendant.'"  *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737,

No. 14-30731

743 (5th Cir. 2000) (quoting *Landreneau v. Fruge*, 598 So. 2d 658, 662 (La. Ct. App. 1992)). McLaughlin contends that the prescriptive period was tolled because she could not reasonably have known that Paxil caused her heart valve damage until July 2011, when a particular study was published in a medical journal. McLaughlin appears to compare her claim to tort cases concerning latent injuries, which do not manifest for years or are not discovered to be connected to exposure to a toxic material until years after the disease or injury occurs. *See Cole v. Celotex Corp.*, 620 So. 2d 1154, 1157-58 (La. 1993)) (in case of asbestos exposure, holding that prescription commenced when the plaintiff was definitively diagnosed with asbestosis, where previous doctors had told him his x-ray abnormalities could be the result of multiple causes and he previously had no symptoms). However, McLaughlin's situation is quite different. As we have said, here the undisputed evidence shows that she had actual or constructive knowledge of her claims by October 2010, when she told two doctors that her heart valve damage was caused by Paxil and retained an attorney to pursue the claim. Thus, the doctrine of *contra non valentem* did not toll the prescriptive period. *See Boyd*, 656 So. 2d at 688-89.

## III. Conclusion

For the foregoing reasons, the district court's grant of summary judgment to the defendant is AFFIRMED.